CASSIA COUNTY
RECORDED FOR:
TITLEONE - BURLEY
04:19:06 PM 10-01-2018
**2018-003845**
NO. PAGES: 47    FEE: $96.00
JOSEPH W. LARSEN
COUNTY CLERK
DEPUTY: CVELASQUEZ
Electronically Recorded by Simplifile

18311603

THIS INSTRUMENT PREPARED BY:
Virginia M. Pedreira
Stoel Rives LLP
600 University Street
Suite 3600
Seattle, WA 98101-4109

ELECTRONICALLY RECORDED
STAMPED FIRST PAGE NOW
INCORPORATED AS PART OF
THE ORIGINAL DOCUMENT.

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Metropolitan Life Insurance Company
10801 Mastin Blvd., Ste. 930
Overland Park, KS 66210-2101
Attn: Loan Manager, Central Region

18311603

Space above this line for Recorder's Use

Millenkamp
Loan Nos.: 199534 and 199535

## MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

### (Cassia County and Jerome County, Idaho)

FOR THE PURPOSE OF FACILITATING THE RECORD HEREOF, THIS MORTGAGE HAS BEEN EXECUTED IN TWO COUNTERPARTS, EACH OF WHICH SHALL BE TAKEN TO BE AN ORIGINAL, AND ALL OF WHICH TOGETHER OR ANY ONE THEREOF SHALL BE DEEMED TO CONSTITUTE BUT ONE AND THE SAME INSTRUMENT.

THIS MORTGAGE ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

SEE ARTICLE 7 FOR ADDRESS OF GRANTOR AND MORTGAGEE

This mortgage is dated as of September 26, 2018, and is by WILLIAM JOHN MILLENKAMP a/k/a Bill Millenkamp ("**W. Millenkamp**"), SUSAN JO MILLENKAMP a/k/a/ Susie Millenkamp ("**S. Millenkamp**"), EAST VALLEY CATTLE, LLC, an Idaho limited liability company ("**East Valley**"); IDAHO JERSEY GIRLS JEROME DAIRY LLC, an Idaho limited liability company ("**Idaho Jersey**"), GOOSE RANCH LLC, an Idaho limited liability company ("**Goose Ranch**"), and MILLENKAMP PROPERTIES, L.L.C., an Idaho limited liability company ("**Millenkamp Properties**") (W. Millenkamp, S. Millenkamp, East Valley, Idaho Jersey, Goose Ranch and Millenkamp Properties are herein individually and collectively, "**Grantor**"), to and in favor of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Mortgagee**").

Mortgagee has agreed to make loans in the combined total original principal sum of up to $165,400,000.00 (the "**Loans**") to Grantor, MILLENKAMP CATTLE, INC., an Idaho corporation ("**Millenkamp Cattle**"), and MILLENKAMP FAMILY LLC, an Idaho limited liability company ("**Millenkamp Family**") (Grantor, Millenkamp Cattle, and Millenkamp Family are individually and collectively, "**Borrower**") under the terms and conditions of that certain Promissory Note A by Borrower in favor of Mortgagee in the original principal amount of $106,000,000.00 dated as of the date of this mortgage, and that certain Promissory Note B by Borrower in favor of Mortgagee in the original principal amount of up to $59,400,000.00 dated as of the date of this mortgage (collectively, the "**Notes**").

18311603

THIS INSTRUMENT PREPARED BY:
Virginia M. Pedreira
Stoel Rives LLP
600 University Street
Suite 3600
Seattle, WA 98101-4109

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Metropolitan Life Insurance Company
10801 Mastin Blvd., Ste. 930
Overland Park, KS 66210-2101
Attn: Loan Manager, Central Region

ELECTRONICALLY RECORDED
STAMPED FIRST PAGE NOW
INCORPORATED AS PART OF
THE ORIGINAL DOCUMENT.

Instrument # 2184031
JEROME COUNTY, JEROME, IDAHO
10-01-2018    04:04:37 PM    No. of Pages: 47
Recorded for: TITLEONE - BURLEY
MICHELLE EMERSON    Fee: $96.00
Ex-Officio Recorder Deputy: jw
Electronically Recorded by Simplifile

18311603

Space above this line for Recorder's Use

Millenkamp
Loan Nos.: 199534 and 199535

## MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

### (Cassia County and Jerome County, Idaho)

FOR THE PURPOSE OF FACILITATING THE RECORD HEREOF, THIS MORTGAGE HAS BEEN EXECUTED IN TWO COUNTERPARTS, EACH OF WHICH SHALL BE TAKEN TO BE AN ORIGINAL, AND ALL OF WHICH TOGETHER OR ANY ONE THEREOF SHALL BE DEEMED TO CONSTITUTE BUT ONE AND THE SAME INSTRUMENT.

THIS MORTGAGE ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

SEE ARTICLE 7 FOR ADDRESS OF GRANTOR AND MORTGAGEE

This mortgage is dated as of September 26, 2018, and is by WILLIAM JOHN MILLENKAMP a/k/a Bill Millenkamp ("**W. Millenkamp**"), SUSAN JO MILLENKAMP a/k/a/ Susie Millenkamp ("**S. Millenkamp**"), EAST VALLEY CATTLE, LLC, an Idaho limited liability company ("**East Valley**"); IDAHO JERSEY GIRLS JEROME DAIRY LLC, an Idaho limited liability company ("**Idaho Jersey**"), GOOSE RANCH LLC, an Idaho limited liability company ("**Goose Ranch**"), and MILLENKAMP PROPERTIES, L.L.C., an Idaho limited liability company ("**Millenkamp Properties**") (W. Millenkamp, S. Millenkamp, East Valley, Idaho Jersey, Goose Ranch and Millenkamp Properties are herein individually and collectively, "**Grantor**"), to and in favor of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Mortgagee**").

Mortgagee has agreed to make loans in the combined total original principal sum of up to $165,400,000.00 (the "**Loans**") to Grantor, MILLENKAMP CATTLE, INC., an Idaho corporation ("**Millenkamp Cattle**"), and MILLENKAMP FAMILY LLC, an Idaho limited liability company ("**Millenkamp Family**") (Grantor, Millenkamp Cattle, and Millenkamp Family are individually and collectively, "**Borrower**") under the terms and conditions of that certain Promissory Note A by Borrower in favor of Mortgagee in the original principal amount of $106,000,000.00 dated as of the date of this mortgage, and that certain Promissory Note B by Borrower in favor of Mortgagee in the original principal amount of up to $59,400,000.00 dated as of the date of this mortgage (collectively, the "**Notes**").

Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing
Millenkamp
Loan Nos. 199534 and 199535
97816942.4 0053564-00330

EXHIBIT
7

18311603

THIS INSTRUMENT PREPARED BY:
Virginia M. Pedreira
Stoel Rives LLP
600 University Street
Suite 3600
Seattle, WA 98101-4109

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Metropolitan Life Insurance Company
10801 Mastin Blvd., Ste. 930
Overland Park, KS 66210-2101
Attn: Loan Manager, Central Region

18311603

Space above this line for Recorder's Use

Millenkamp
Loan Nos.: 199534 and 199535

## MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

### (Cassia County and Jerome County, Idaho)

FOR THE PURPOSE OF FACILITATING THE RECORD HEREOF, THIS MORTGAGE HAS BEEN EXECUTED IN TWO COUNTERPARTS, EACH OF WHICH SHALL BE TAKEN TO BE AN ORIGINAL, AND ALL OF WHICH TOGETHER OR ANY ONE THEREOF SHALL BE DEEMED TO CONSTITUTE BUT ONE AND THE SAME INSTRUMENT.

THIS MORTGAGE ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

SEE ARTICLE 7 FOR ADDRESS OF GRANTOR AND MORTGAGEE

This mortgage is dated as of September 26, 2018, and is by WILLIAM JOHN MILLENKAMP a/k/a Bill Millenkamp ("**W. Millenkamp**"), SUSAN JO MILLENKAMP a/k/a/ Susie Millenkamp ("**S. Millenkamp**"), EAST VALLEY CATTLE, LLC, an Idaho limited liability company ("**East Valley**"); IDAHO JERSEY GIRLS JEROME DAIRY LLC, an Idaho limited liability company ("**Idaho Jersey**"), GOOSE RANCH LLC, an Idaho limited liability company ("**Goose Ranch**"), and MILLENKAMP PROPERTIES, L.L.C., an Idaho limited liability company ("**Millenkamp Properties**") (W. Millenkamp, S. Millenkamp, East Valley, Idaho Jersey, Goose Ranch and Millenkamp Properties are herein individually and collectively, "**Grantor**"), to and in favor of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Mortgagee**").

Mortgagee has agreed to make loans in the combined total original principal sum of up to $165,400,000.00 (the "**Loans**") to Grantor, MILLENKAMP CATTLE, INC., an Idaho corporation ("**Millenkamp Cattle**"), and MILLENKAMP FAMILY LLC, an Idaho limited liability company ("**Millenkamp Family**") (Grantor, Millenkamp Cattle, and Millenkamp Family are individually and collectively, "**Borrower**") under the terms and conditions of that certain Promissory Note A by Borrower in favor of Mortgagee in the original principal amount of $106,000,000.00 dated as of the date of this mortgage, and that certain Promissory Note B by Borrower in favor of Mortgagee in the original principal amount of up to $59,400,000.00 dated as of the date of this mortgage (collectively, the "**Notes**").

## ARTICLE 1 – GRANT

To secure repayment of the indebtedness evidenced by the Notes and payment and performance of all other Secured Obligations (defined herein), Grantor irrevocably and unconditionally mortgages, warrants, grants, bargains, sells, and conveys to Mortgagee, with right of entry and possession, all of Grantor's estate, right, title and interest which Grantor now has or may later acquire in the following, wherever located, and whether constituting real estate or personal property (individually and collectively, the "**Property**"): (1) the real estate and any interest in the real estate located in Cassia County and Jerome County, Idaho, and described in EXHIBIT A (the "**Land**"); (2) buildings, structures, improvements, and fixtures now or hereafter erected on, affixed or attached to the Land, including all farm products storage and handling units and equipment, and fences, gates and loading chutes (the "**Improvements**"); (3) (A) wells, irrigation and drainage pumps, motors, pipes, windmills, frost protection equipment, center pivot irrigators, sprinklers, drip line and emitters, filters, water measurement meters and control structures and other watering and irrigation equipment; and (B) all other equipment now or hereafter affixed or installed in any manner on the Land or the Improvements or used in connection with the operation of the Property (other than rolling stock and implements customarily towed) and all livestock handling fixtures and other non-rolling stock necessary to run the dairy business located on the Land, including dairy equipment and fixtures (the "**Equipment**"); (4) easements, rights-of-way, and other rights and entitlements appurtenant to the Land or used in connection with the Land or as a means of access thereto; (5) other tenements, hereditaments and appurtenances to the Land; (6) rights to the use and enjoyment of water, whether surface or subsurface, whether riparian, appropriative, prescriptive or otherwise, and whether or not appurtenant, now or hereafter relating or available to the Land or Improvements or used in connection therewith: (A) water allocations, water banking rights or interests, carryover rights, supplemental water, storage and exchange rights drainage rights, distribution rights, storage rights, delivery rights, and other water-related rights or entitlements, whether available through any public or private irrigation projects, companies, districts, agencies or otherwise, together with all shares of stock evidencing any such rights or entitlements, and all voting rights and other rights and privileges that now or hereafter may exist with respect to such stock or with respect to participation, membership, or other involvement in any such projects, companies, districts, or agencies; (B) water and water inventory in storage; (C) rights under well, pump and filter sharing agreements; and (D) all easements, permits, licenses, leases, contracts, grants, reservations and any other rights and entitlements, however created, to drill, install and maintain wells, pumps and pipeline systems, or to use, appropriate, pump, extract, receive, transport, store or transfer water, including the rights described on EXHIBIT B ("**Water Rights**"); (7) shares, and rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Grantor or the Property may receive water, including the shares described on EXHIBIT C and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts; (8) coal, oil, gas, and other hydrocarbon substances, geothermal resources, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under or produced from the Land and other coal, oil, gas, geothermal, and mineral interests with which any of the foregoing interests or estates are pooled or unitized and other "as-extracted collateral"; (9) timber now or hereafter standing on or cut from the Land; (10) all milk, cream, and other dairy products, and all receivables thereof (the "**Dairy Products**"); (11) leases, subleases, licenses and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property, (individually and collectively, the "**Leases**"); (12) grazing leases, permits, allotments, licenses and privileges covering state or federally owned lands used or operated in connection with the land, including the those described on EXHIBIT D ("**Grazing Permits**"), together with all renewals of such Grazing Permits and any Grazing Permits acquired in the future; (13) permits and licenses relating or pertaining to the use or enjoyment of the Property; (14) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property ("**Insurance Claims**"); (15) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or Improvements

2

("**Condemnation Awards**"); (16) accessions, attachments and other additions to, substitutes or replacements for, all proceeds and products of, the Property; and (17) books, records and files relating to the Property, including computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

## ARTICLE 2 - ASSIGNMENT OF RENTS

Grantor irrevocably and unconditionally assigns Mortgagee all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other proceeds of the Property, whether now due, past due or to become due, including all prepaid rents, security deposits and other supporting obligations (collectively, the "**Rents**").

Notwithstanding the provisions of this Article 2, Mortgagee confers upon Grantor a revocable license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "**License**"). If an Event of Default has occurred, Mortgagee may terminate the License without notice to or demand upon Grantor.

Subject to the License, Mortgagee has the right, power and authority to collect any and all Rents. Mortgagee, by its acceptance of this mortgage does not assume any duty or obligation under the Leases.

All lessees under the Leases are hereby irrevocably authorized and notified by Grantor to rely upon and to comply with (and are fully protected in so doing) any notice or demand by Mortgagee for the payment to Mortgagee of Rents, or for the performance of any of lessees' undertakings under the Leases, and lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder. Subject to the License, Mortgagee may notify any person that the Leases have been assigned to Mortgagee and that all Rents are to be paid directly to Mortgagee, whether or not Mortgagee has commenced or completed foreclosure of or taken possession of the Property.

Mortgagee may apply all amounts received by it pursuant to this assignment to pay any of the following in such order and amounts as Mortgagee deems appropriate: (1) Secured Obligations; (2) expenses of leasing, operating, maintaining and managing the Property, including without limitation, salaries, fees, commissions and wages of a managing agent and such other employees, agents or independent contractors as Mortgagee deems necessary or desirable; (3) taxes, charges, claims, assessments, any other liens, and premiums for insurance relating to the Property that Mortgagee deems necessary or desirable; and (4) the cost of alterations, renovations, repairs or replacements, and expenses incident to taking and retaining possession of the Property.

## ARTICLE 3 – SECURITY AGREEMENT/FIXTURE FILING

Grantor grants Mortgagee a security interest in and pledges and assigns to Mortgagee all of Grantor's right, title and interest in all Property that may be characterized as personal property (the "**Personalty**"). Grantor authorizes Mortgagee to file any UCC financing statements required by Mortgagee, from time to time, to perfect Mortgagee's security interest in the Property.

The address adjacent to Grantor's signature below, (a) if Grantor is an individual, is Grantor's principal residence; (b) if Grantor is other than an individual and has only one place of business, is Grantor's principle place of business; and (c) if Grantor is anything other than an individual and has more than one place of business, is Grantor's chief executive office. The address for Mortgagee in Article 7 is its address as secured party under the Uniform Commercial Code as adopted in the Governing Law State (the "**UCC**").

This mortgage constitutes a financing statement filed as a fixture filing under the UCC, covering any Property which now is or later may become a fixture attached to the Land or any Improvement. For this purpose, the "debtor" is Grantor, the "secured party" is Mortgagee and the collateral is the Property.

## ARTICLE 4 – SECURED OBLIGATIONS

Grantor makes the mortgage, grant, conveyance, transfer and assignment in Article 1, makes the irrevocable and absolute assignment in Article 2, and grants the security interest under Article 3 to secure payment and performance of the following obligations (individually and collectively, the "**Secured Obligations**"):  (1) all Obligations (as defined in the Notes); (2) all obligations of Grantor under this mortgage; (3) all modifications, amendments, extensions, and renewals, however evidenced, of any of the Secured Obligations; and (4) any of the foregoing that arises after the filing of a petition by or against Grantor under an insolvency or bankruptcy proceeding.

**Future Secured Obligations**. The Secured Obligations include future advances made by Mortgagee for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations, together with interest thereon, are secured by this mortgage to the same extent as if made or incurred on the date of the execution of this mortgage, and have priority as to third persons with or without actual notice from the time this mortgage is filed for record as provided by law. The total amount of indebtedness secured by this mortgage may decrease or increase from time to time. Nothing in this Section will constitute a commitment to make additional or future advances in any amount.

**General**. The scheduled maturity date of the Loans is August 15, 2038. All persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the Notes, this mortgage and all other agreements and instruments evidencing and or securing the Loan (individually and collectively, the "**Loan Documents**"; provided, however, the Loan Documents specifically do not include the Unsecured Environmental Indemnity Agreement, dated as of the date hereof between, without limitation, Grantor and Mortgagee; that agreement, the "**Environmental Indemnity**"). The Loan Documents may include terms which permit or provide that the rate of interest on one or more of the Secured Obligations may vary from time to time. The obligations secured hereby may provide for the interest rate, payment terms, or balance due to be indexed, adjusted, renewed or renegotiated. Without limitation, the Notes expressly provide that Mortgagee may at its option change or adjust the interest rate as referenced therein. This mortgage does not secure any indebtedness, liability or obligation that is expressly stated to be unsecured.

## ARTICLE 5 – WARRANTY AND COVENANTS

**Warranty of Title**. Grantor represents and warrants that, other than the exceptions to title expressly listed on a schedule of exceptions to coverage in the final commitment for title insurance or pro forma policy of title insurance accepted by Mortgagee prior to the Closing (defined in the Notes), Grantor lawfully possesses and holds fee simple title to all of the Land and Improvements; and that Grantor has the right, power and authority to mortgage, grant, convey and assign the Property. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

**Water Rights**. Grantor represents and warrants that the Water Rights afford the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event, based on current projections, sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property

**Performance of Secured Obligations**. Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

**Maintenance of Property**. Grantor shall: maintain and preserve all rights and privileges Grantor now has in the Property; make any repairs, renewals or replacements to keep the Property in good working condition and repair; operate the Property, whether improved pastures, orchards, groves, grazing, timber, or crop lands, in a good and husband-like manner in accordance with accepted principles of sound

4

agricultural and forestry practices in the area in which the Land is located; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither remove nor permit the removal of any oil, gas, mineral, stone, rock, clay, or gravel owned by Grantor, or any timber, buildings, top soil, or fertilizer, without the prior written consent of Mortgagee.

**Water Rights**. Grantor shall maintain the Water Rights during the term of the Loans at a level and of a nature sufficient to provide the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property. All existing Water Rights benefiting or available to the Property shall be maintained in full force and effect for the benefit of the Property by Grantor and applied to beneficial use so as to maintain the validity and priority of such rights. Grantor shall fully comply with, and not permit a default to occur under any water licenses, permits or delivery contracts used to provide water to the Property, and shall timely exercise all renewal or extension rights in such contracts. Grantor shall not modify, amend or terminate any Water Rights without Mortgagee's prior written consent. Grantor shall comply with the rules, regulations and ordinances of any water district, water agency or groundwater management agency in which the Property or any portion thereof is located and pay all related fees and assessments prior to delinquency. All irrigation wells and related facilities used to deliver irrigation water to any portion of the Property shall remain physically located within the boundaries of such Property or the subject of valid, enforceable easements appurtenant to the Property and encumbered hereby. If the use of any irrigation facilities or water serving the Property requires consent or the use of other property, Grantor shall maintain in effect all requisite easements or other legally enforceable and assignable rights to use such facilities and/or water to service the Property. Grantor shall notify Mortgagee if the irrigation water supply to any portion of the Property is interrupted or subject to interruption for any reason other than temporarily for routine maintenance or repairs in a manner that does not impair the operation of the Property.

**Grazing Permits**. Grantor shall renew all Grazing Permits upon or prior to their expiration date, execute any instrument deemed necessary by Mortgagee to effect a collateral assignment or waiver of such renewals to Mortgagee, and pay all fees and charges, and to perform all acts and things necessary to preserve and keep in good standing all of such Grazing Permits and all renewals thereof. Grantor shall take no action which would adversely affect any of such Grazing Permits or Grantor preference status thereunder, and that in the event of foreclosure of this mortgage, Grantor will waive all claims for preference under any such Grazing Permits upon demand from the purchaser at foreclosure sale of the Land, or any successor to such purchaser. Grantor further agrees that the lands covered by any lease, permit or privilege which Grantor, with the consent of Mortgagee, shall substitute for the Grazing Permits, shall be subject to the provisions of this mortgage. Upon foreclosure and sale of the Land, title to the improvements held by Grantor on any federal or state lands covered by the Grazing Permits, together with Grantor right to be paid the reasonable value thereof, shall pass free of all encumbrances other than those of the United States to the purchaser at such sale, and Mortgagee is hereby authorized to execute, at is option, on behalf of Grantor, a bill of sale for such improvements. If title in fee simple to any of the lands covered by the Grazing Permits (or to any other lands) shall hereafter be acquired by Grantor, it is understood and agreed that such lands shall, upon such acquisition, become subject to the lien of this mortgage to the same extent as though lands had originally been included herein as part of the Land, and further, that all of the terms, covenants, conditions and stipulations of this mortgage, applicable to the Property, shall extend and be applicable to any lands hereafter so acquired. Grantor shall execute any documents reasonably requested by Mortgagee to perfect or document the pledge of the Grazing Permits to Mortgagee.

**Assignment of Milk Proceeds**. As additional collateral and to further secure the Notes and other Secured Obligations of Grantor, Grantor does hereby absolutely, presently and irrevocably assign the

5

proceeds of the sale of Grantor's Dairy Products in an amount and with priority sufficient to cover the monthly Note payment, as adjusted under the provisions of the Notes, which assignment shall commence as of the date of this Mortgage. The provisions of this section shall apply to any replacement milk contracts. Grantor covenants and agrees that it will (i) make no further or future assignments of the proceeds of the agreements under which Grantor sells Dairy Products produced on the Land, or otherwise alter the operations on the Property, in a manner which would alter or eliminate Mortgagee's right under this Mortgage to receive from Grantor's proceeds of the sale of Dairy Products a sum sufficient to satisfy the monthly payment due under the Notes, as adjusted under the provisions of the Notes, (ii) deliver and maintain in effect assignments of Dairy Products proceeds in form and substance acceptable to Mortgagee and accepted by the purchaser of such Dairy Products, and (iii) not terminate or alter, or permit to be terminated or altered, such assignments, absent Mortgagee's prior written consent.

**Compliance with Applicable Law.** Grantor shall not commit or allow any act upon or use of the Property which would violate any applicable law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

**Taxes and Assessments.** Grantor shall pay prior to delinquency all taxes, levies, charges and assessments imposed by applicable law or any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, and any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this mortgage or any other Loan Documents, together with any and all interest and penalties thereon (individually and collectively, "**Imposition**"). If after the date of this mortgage, the State of Idaho passes any law deducting from the value of Land for the purpose of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by a mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this mortgage, then within 180 days after notice by Mortgagee to Grantor, Grantor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this Section, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that: (1) Mortgagee is satisfied that neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest; and (2) Grantor shall have posted a bond or furnished such other security required from time to time by Mortgagee.

**Damages and Insurance and Condemnation Awards.** Mortgagee may, at its option: (1) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and Mortgagee may make any compromise or settlement of the action or proceeding; (2) participate in any action or proceeding relating to any Condemnation Award; and (3) join Grantor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Mortgagee. Mortgagee may apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses, including Legal Fees (defined in the Notes), incurred in connection with such recovery. The balance shall, at Mortgagee's option, be applied to pay or prepay some or all of the Secured Obligations in such order and proportions as it may choose. GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER WITH RESPECT TO ALLOCATION OF CONDEMNATION AWARDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER.

**Site Visits, Observation and Testing.** Mortgagee and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing appraisals, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the Environmental Indemnity, and otherwise to determine Grantor's compliance with this mortgage.

**Prohibited Transfers**. Grantor agrees that a material factor in Mortgagee's decision to enter into the Loan Documents is the expertise, financial status and other characteristics of Grantor. Grantor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Mortgagee may declare all Secured Obligations to be due and payable immediately. "**Prohibited Transfer**" means: (1) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, or other transfer of all or any material part or interest of the Property, whether voluntary, involuntary, by operation of law or otherwise, other than Permitted Encumbrances (as hereinafter defined); and, provided, however, Grantor may sell or dispose of fixtures and Equipment in the ordinary course of their business so long as such items are replaced with items of equal or greater value and utility; (2) if Grantor is a corporation, any transfer or transfers of shares of more than ten percent (or such other portion, if any, permitted under the Notes) of the voting power or the direct or indirect beneficial ownership of Grantor, on a cumulative basis (provided, however, that a transfer or transfers of twenty-five percent or less of the shares to an existing shareholder shall not constitute a Prohibited Transfer, subject to the Permitted Transfer Conditions, defined below), or any dissolution of the corporation; (3) if Grantor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Notes) of the partnership interests, on a cumulative basis (provided, however, that a transfer or transfers of twenty-five percent or less of the partnership interests to an existing partner shall not constitute a Prohibited Transfer, subject to the Permitted Transfer Conditions); (4) if Grantor is a limited liability company, withdrawal or removal of any manager or managing member, termination of the limited liability company or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Notes) of the voting power or the ownership of the economic interest in the Grantor, on a cumulative basis (provided, however, that a transfer or transfers of twenty-five percent or less of the voting power or ownership interests of the economic interest of Grantor to an existing member shall not constitute a Prohibited Transfer, subject to the Permitted Transfer Conditions); or (5) if Grantor is a trust, withdrawal or removal of any trustee or revocation of the trust. Any transfer permitted under this Section (other than the Permitted Encumbrances) shall be subject to the following conditions (the "**Transfer Conditions**"): (i) Grantor shall notify Mortgagee in writing of the proposed transfer no less than thirty days prior to the date such transfer is to occur; (ii) Grantor shall provide Mortgagee with copies of all documents effecting such transfer and with all documentation or other assurances reasonably requested by Mortgagee to demonstrate compliance with any of the conditions to such transfer; (iii) Grantor shall pay a reasonable service charge not to exceed $2,500 to Mortgagee for each such transfer; and (iv) no Event of Default, or any condition which, with the giving of notice or passage of time or both would constitute and Event of Default, shall exist at the time Grantor gives Mortgagee notice of such transfer or at the time such transfer occurs. "Permitted Encumbrances" means (a) liens securing taxes or assessments not due or payable; (b) liens in favor of Mortgagee; (c) liens created by specifically identified written documents which are recorded in the land records and listed as exceptions on Schedule B of any title insurance policy for the Loans which Mortgagee has accepted and approved; and (d) any leases of any portion of the Property approved by Mortgagee.

**Prohibited Transfer Rate**. If there is a Prohibited Transfer, Mortgagee may deem the principal balance of the Loans and, to the extent permitted by applicable law, all other Obligations, increase at the Contract Rate (as defined in the Notes) by 2.000% per annum, retroactive to the date of the Prohibited Transfer. Mortgagee's rights under this Section are an option available to Mortgagee, and unless elected by Mortgagee, a Prohibited Transfer will constitute an Event of Default and all Obligations will bear interest at the Default Rate (as defined in the Notes).

**Estate Planning Transfers**. Notwithstanding the anything to the contrary herein, an Estate Planning Transfer (as defined below) shall not constitute a Prohibited Transfer or an Event of Default. For purposes of this section, (1) "**Estate Planning Transfer**" means a Transfer of all or part of the interests in Grantor to a transferee ("**Transferee**") that satisfies all of the following criteria: (a) it is made for Estate Planning Purposes (defined herein), (b) all payments of principal and interest due under the Loan Documents are current, (c) there has occurred no Event of Default, nor does any event or condition exist

7

which with the passage of time or the giving of notice or both would become an Event of Default, (d) such transfer shall not result in a Transferee owning twenty-five percent (25%) or more of the interests in Grantor; and (2) "**Estate Planning Purposes**" means an assignment or transfer of any partnership or other ownership interests in Grantor to: (a) a revocable trust created by Grantor or an owner of Grantor (for the purposes of this paragraph an "**Owner**") for estate planning purposes in which such member is the settlor and trustee, (b) an irrevocable trust created by Owner for the benefit of one or more members of such Owner's Immediate Family, and/or (c) members of a member of Owner's Immediate Family; and (3) "**Immediate Family**" means such person's immediate family within the following categories: a son, daughter or lineal descendant, a stepson, stepdaughter, stepfather, stepmother, father, mother or a spouse; provided that for the purpose of determining any of the foregoing relationships, a legally adopted child of a person is considered a child of person by blood."

**Compensation and Reimbursement of Costs and Expenses**. Grantor shall pay (1) for any services rendered in connection with this mortgage; (2) all of Mortgagee's costs and expenses incurred in rendering any such services; and (3) all costs, expenses and other advances incurred or made by Mortgagee in an effort to enforce the terms of this mortgage or protect the Property, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, or in defending any action or proceeding arising under or relating to this mortgage, including Legal Fees, and costs of any Foreclosure Sale. If Mortgagee chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances incurred by Mortgagee in each of those Foreclosure Sales.

**Indemnification**. GRANTOR SHALL INDEMNIFY MORTGAGEE AGAINST AND SHALL HOLD MORTGAGEE HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, LEGAL FEES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH MORTGAGEE MAY SUFFER OR INCUR: (1) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS MORTGAGE OR ANY OF THE OTHER LOAN DOCUMENTS OR BY LAW; (2) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (3) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY MORTGAGEE TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE LOAN DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY MORTGAGEE SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE OF THIS MORTGAGE.

**Payments Due Under This Mortgage**. Grantor must pay all obligations to pay money arising under this mortgage immediately upon demand by Mortgagee. Each such obligation shall bear interest from the date the obligation arises at the Default Rate (as defined in the Notes).

**Transactions with Affiliates**. Transactions with affiliates of Grantor shall not be consummated on terms materially more favorable to the affiliate than would have been obtained in an arm's length transaction in the ordinary course of business with any person or entity that is not an affiliate.

### ARTICLE 6 – EVENTS OF DEFAULT AND REMEDIES

**Events of Default**. The following each shall be an event of default under this mortgage (an "**Event of Default**"): (1) an Event of Default (as defined in the Notes); (2) a Prohibited Transfer; (3) if Grantor is in default beyond applicable notice and grace periods under any other mortgage, deed of trust, deed to secure debt or other security agreement covering any part of the Property, whether it be superior or junior in lien to this mortgage; (4) for more than ten days after notice from Mortgagee, Grantor is in default under any term, covenant or condition of this mortgage not separately described as an Event of Default, which can be cured by the payment of a sum of money; or (5) for 30 days after notice from Mortgagee,

Grantor is in default under any term, covenant or condition of this mortgage not separately described as an Event of Default; provided that if: (A) it is reasonably certain that the default cannot be cured by Grantor within that 30 day period; and (B) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

**Remedies**. At any time after an Event of Default, Mortgagee may invoke any and all of the rights and remedies described below. All of such rights and remedies are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

**Acceleration**. Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately.

**Receiver**. Mortgagee may, to the extent permitted by applicable law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any guarantor of all or any portion of the Secured Obligations, or of any person liable for the payment of the Secured Obligations. GRANTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION; AND GRANTOR AGREES TO NOT OPPOSE SUCH APPOINTMENT.

**Entry**. To the extent permitted by applicable law, Mortgagee, in person, by agent or by court- appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that Mortgagee may consider necessary and appropriate to protect the security of this mortgage. Such other things may include: taking and possessing all of Grantor's or the then owner's books and records; entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying rents; collecting and receiving any payment of money owing to Grantor; completing any unfinished construction; and/or contracting for and making repairs and alterations. If Mortgagee so requests, Grantor will assemble all of the Property that has been removed from the Land and make all of it available to Mortgagee at the site of the Land. GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS MORTGAGEE AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS MORTGAGEE CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS. Regardless of any provision of this mortgage or the other Loan Documents, Mortgagee shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Mortgagee, unless Mortgagee has given express written notice of its election of that remedy in accordance with the UCC.

**Cure; Protection of Security**. Mortgagee may cure any breach or default of Grantor, and if Mortgagee chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it considers necessary or appropriate to protect the security of this mortgage. Such other things may include: (1) appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this mortgage; (2) paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's judgment is or may be senior in priority to this mortgage, such judgment of Mortgagee to be conclusive as among the parties to this mortgage; (3) obtaining insurance and/or paying any premiums or charges for insurance required to be carried under the Notes; (4) otherwise caring for and protecting any and all of the Property; and/or (5) employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted under this Article either

with or without giving notice to any person. Notwithstanding the foregoing, in no event will Mortgagee have any obligation to take any of the actions set forth in this Section.

**Uniform Commercial Code Remedies**. Mortgagee may exercise any or all of the remedies granted to a secured party under the UCC. To the extent that applicable law imposes the duty on Mortgagee to exercise remedies in a commercially reasonable manner, Grantor acknowledges and agrees that it is not commercially unreasonable for Mortgagee to: (1) fail to incur expenses reasonably deemed significant by Mortgagee to prepare the Personalty for disposition or to fail to complete raw material or work in process into finished goods or other finished products for disposition; (2) fail to exercise collection remedies against account debtors or other persons obligated on the Personalty (directly or through the use of collection specialists), or to fail to remove liens, encumbrances or adverse claims against the Personalty; (3) advertise dispositions of the Personalty through publications or media of general circulation, whether or not the Personalty is of a specialized nature; (4) contact persons for expressions of interest in acquiring all or any portion of the Personalty; (5) hire professional auctioneers to assist in the disposition of the Personalty, whether or not the Personalty is of a specialized nature; (6) dispose of the Personalty by utilizing Internet sites that provide for or are reasonably capable of the auction of assets of the types included in the Personalty; (7) dispose of the Personalty in wholesale rather than retail markets; (8) disclaim disposition warranties; (9) purchase insurance or credit enhancements to insure Mortgagee against risks of loss, collection or disposition of the Personalty or to provide to Mortgagee a guaranteed return from the collection or disposition of the Personalty; or (10) sell any Personalty jointly with any of the Property or to sell any Personalty in a sale separate from a sale of any of the Property. Grantor acknowledges that the purpose of this Section is to provide a non-exhaustive indication of what actions or omissions by Mortgagee would fulfill Mortgagee's duties under the UCC in Mortgagee's exercise of remedies against the Personalty, and that other actions or omissions by Mortgagee shall not be deemed to fail to fulfill such duties solely on account of not being expressly included or indicated in this Section.

**Judicial Action**. Mortgagee may bring an action in any court of competent jurisdiction to foreclose this mortgage in the manner provided under applicable law for the foreclosure of mortgages on real property or to obtain specific enforcement of any of the covenants or agreements of this mortgage.

**Sales of Personal Property**. Mortgagee may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage. If it chooses to do so, Mortgagee may dispose of any Personalty separately from the sale of real property, in any manner permitted by Article 9 of the UCC, including any public or private sale, or in any manner permitted by any other applicable law. Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation.

**Single or Multiple Foreclosure Sales**. If the Property consists of more than one lot, parcel or item of property, in connection with any sale of the Property described in or permitted under this Article, Mortgagee may: (1) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (2) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made in connection with judicial proceedings, or by virtue of a judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner Mortgagee may deem to be in its best interests (any such sale or disposition, a "**Foreclosure Sale**"). If it chooses to have more than one Foreclosure Sale, Mortgagee at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale will terminate or affect the liens of this mortgage on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full.

**Additional Rights**. In addition to the rights and powers given to Mortgagee under this mortgage, Mortgagee shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this mortgage.

10

**Credit Bids**. At any Foreclosure Sale, any person, including Grantor or Mortgagee, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law. Instead of paying cash for that Property, Mortgagee may settle for the purchase price by crediting the sales price of the Property against the following obligations: first, the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Grantor is obligated to reimburse Mortgagee; and second, all other Secured Obligations in any order and proportions as Mortgagee may choose.

**Application of Foreclosure Sale Proceeds, Rents and Other Sums**. Mortgagee shall apply the proceeds of any Foreclosure Sale to pay (or reimburse Mortgagee for payment of) the Secured Obligations in any order and proportions as Mortgagee may choose, with the surplus, if any, to be paid over to Grantor. Mortgagee has no liability for any funds which it does not actually receive.

**Waivers**. Grantor waives: (1) any right to require Mortgagee to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Mortgagee's power to pursue; (2) any defense based on any legal disability of Borrower, any discharge or limitation of the liability of Borrower to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Grantor's obligations exceed or are more burdensome than those of Borrower; (3) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this mortgage and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and notices of every kind; (4) any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Secured Obligations or any part of it; and (5) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Mortgagee may have against Borrower, and all rights to participate in any security now or later to be held by Mortgagee for the Secured Obligations. Grantor waives all rights and defenses that Grantor may have because the Secured Obligations may be secured by real property other than the Property hereby encumbered. This is an unconditional and irrevocable waiver of any rights and defenses Grantor may have because the Secured Obligations may be secured by real property other than the Property. Grantor waives any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered. No provision or waiver in this mortgage shall be construed as limiting the generality of any other provision or waiver contained in this mortgage.

**Information**. Grantor is solely responsible for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee will have no duty to disclose to Grantor any information which Mortgagee may receive about Borrower's financial condition, business operations, or any other circumstances bearing on its ability to perform.

**No Mortgagee in Possession**. Neither the enforcement of any of the remedies under this Article, the assignment of the Rents and Leases under Article 2, the security interests under Article 3, nor any other remedies afforded to Mortgagee under the Loan Documents, at law or in equity shall cause Mortgagee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Mortgagee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

## ARTICLE 7 – MISCELLANEOUS

**Notices**. All notices, approvals, consents, and other communications, under this mortgage ("**Notices**") must be in writing and mailed or delivered to the address specified herein. All Notices will be deemed to be given or made upon the earlier to occur of: (1) actual receipt by the intended recipient; or (2) (A) if delivered by hand or by courier, upon delivery; or (B) if delivered by mail, four Business Days after deposit in the U.S. mail, properly addressed, postage prepaid; except that notices and other communications to Mortgagee will not be effective until actually received by Mortgagee. Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below; if to Mortgagee, to Metropolitan Life Insurance Company, Agricultural Investments, 10801 Mastin Blvd., Ste. 930, Overland Park, KS 66210, Attn: Director, with a carbon copy to Metropolitan Life Insurance Company, Agricultural Investments, 10801 Mastin Blvd, Ste. 120, Overland Park, KS 66210, Attn: Director.

**Partial Release**. Grantor may request Mortgagee to release one or more parcels of Land, from time to time, from the lien of this mortgage (a "**Partial Release**"), which request may be granted at Mortgagee's sole discretion and which may, at Mortgagee's sole discretion, be subject to a principle reduction of either of both Notes (including any applicable prepayment pursuant to the Notes) and the satisfaction, as determined by Mortgagee in its sole discretion, of the following terms and conditions: (1) Grantor shall submit a formal written request for a Partial Release (the "**Request**") not less than ninety days prior to the date upon which Grantor desires the partial release to occur, and shall include with the Request all necessary documentation so as to allow Mortgagee to adequately evaluate the Request, including but not limited to an updated title report covering the Land; (2) No Event of Default shall exist under any of the Loan Documents, either at the time of the Request or at the closing of the Partial Release, and the Partial Release will not cause an Event of Default under any of the Loan Documents; (3) Grantor shall provide, at Grantor's sole expense, a title insurance endorsement which insures the continued first priority lien of mortgage on the real property remaining after the Partial Release, and which insures that the remaining real property is comprised of separate legal lot or lots, has legally enforceable access rights and is comprised of contiguous parcels; (4) Grantor shall pay all of Mortgagee's outside counsel fees and other costs, including title, escrow or appraisal costs, if any, in processing and documenting the Partial Release (including any necessary amendments to the Loan Documents and title endorsement premiums), and Mortgagee's customary service fee; and (5) any other request or obligation related to the Partial Release required by Mortgagee.

**Entire Agreement**. This mortgage and the other Loan Documents collectively: (1) represent the sum of the understandings and agreements between Mortgagee and Grantor concerning the Loans; (2) replace any prior oral or written agreements between Mortgagee and Grantor concerning the Loans; and (3) are intended by Mortgagee and Grantor as the final, complete and exclusive statement of the terms agreed to by them.

**No Waiver or Cure**. Each waiver by Mortgagee must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Mortgagee to take action on account of any default of Grantor. Consent by Mortgagee to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance. The exercise by Mortgagee of any right or remedy under this mortgage or the other Loan Documents or under applicable law, shall not: cure or waive a breach, Event of Default or notice of default under this mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Loan Documents, have been cured); or impair the security of this mortgage; or prejudice Mortgagee or any receiver appointed in accordance with this mortgage, in the exercise of any right or remedy afforded any of them under this mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this mortgage.

**Merger**. No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property.

**Waiver of Dower, Homestead, and Distributive Share**. Grantor relinquishes all right of dower, if any, and waives all right of homestead exemption and distributive share in and to the Property. Grantor waives any right of exemption as to the Property.

**Waiver of Marshalling**. Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshalling of assets or to require upon foreclosure sales of assets in a particular order. Each successor and assign of Grantor, including any holder of a lien subordinate to this mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**Waiver of Certain Other Laws**. To the extent permitted by applicable law, Grantor shall not at any time insist upon, plead, claim or take the benefit or advantage of any applicable law providing for appraisement, valuation, stay, extension, equity or redemption, any statutory or common law right of redemption, and all other exemptions, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption (including, without limitation, any common law or statutory right of redemption), and all other exceptions, as well as valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the lien created by this mortgage. WITHOUT LIMITATION, IF THE UNDERSIGNED GRANTOR, OR ANY OF THEM, IS A CORPORATION, GRANTOR HEREBY RELEASES AND WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY JUDGMENT OF FORECLOSURE AND EACH OF THE ITEMS WAIVED AND RELEASED ABOVE, ON BEHALF OF GRANTOR, AND EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY, SUBSEQUENT TO THE DATE OF THIS MORTGAGE, AND ON BEHALF OF ALL OF THE PERSONS TO THE EXTENT PERMITTED BY APPLICABLE LAW OF THE STATE OF IDAHO.

**Joint and Several Obligations**. If Grantor consists of more than one person, each Grantor (1) acknowledges and undertakes, together with every other Grantor, joint and several liability for the indebtedness, liabilities and obligations of Grantor under this mortgage; (2) acknowledges that this mortgage is the independent and several obligation of each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (3) agrees that its liability hereunder and under any other Loan Document shall be absolute, unconditional, continuing and irrevocable. GRANTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT MORTGAGEE EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST ANY OTHER GRANTOR UNDER THIS MORTGAGE, OR ANY OTHER LOAN DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

**Governing Law/Jurisdiction and Venue**. This mortgage shall be governed exclusively by the laws of the State of Idaho without regard or reference to its conflict of laws principles.

**General**. This mortgage may not be amended, changed, modified, altered or terminated without the prior written consent of Mortgagee. This mortgage may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument. Mortgagee is authorized to execute any other documents or take any other actions necessary to effectuate this mortgage and the consummation of the transactions contemplated herein. Time is of the essence of this mortgage. Each party has participated in negotiating and drafting this mortgage, so if an ambiguity or a question of intent or interpretation arises, this mortgage is to be construed as if the parties had drafted it jointly, as opposed to being construed against a party because it was responsible for drafting one or more provisions of this mortgage. When all Secured Obligations have been paid in full, Mortgagee shall execute and deliver to