## MILK CHECK ASSIGNMENT AGREEMENT FOR GLANBIA FOODS, INC.

1. **DATE, NAMES OF PARTIES AND ADDRESSES**

   1.1 **Date.** This Agreement is made as of April 21, 2021.

   1.2 **Buyer.** Glanbia Foods, Inc., an Idaho corporation, whose address is 121 4th Avenue South, Twin Falls, Idaho 83301, is referred to as the "Buyer".

   1.3 **Producer.** The name and address of the "Producer" is:
   MILLENKAMP CATTLE, INC., an Idaho corporation
   (Producer Nos. 6465, 6481)
   471 North 300 West
   Jerome, ID 83338

   The Producer's telephone number is: ▓▓▓-1232.
   The Producer's social security or federal identification number is: ▓▓▓▓▓▓

   1.4 **Creditor.** The name and address of the "Creditor" is:
   METLIFE REAL ESTATE LENDING LLC
   10801 Mastin Blvd, Suite 700
   Overland Park, KS 66210

   Payment Address:
   MetLife Investment Management, LLC
   PO Box 775611
   Chicago, IL 60677-5611

   Creditor's social security or federal identification number is: ▓▓▓▓▓▓.

2. **Recitals.**

   2.1 Creditor and Rabo Agrifinance LLC, a Delaware limited liability company ("RAF") have made or intend to make separate loans to Producer substantially contemporaneously with the parties' execution and delivery of this Agreement.

   2.2 Both Creditor's and RAF's loans will be secured by Producer's milk. Creditor and RAF have entered into an Intercreditor Agreement between them, to which Producer has consented, addressing their relative rights and priorities as to Producer's milk and the proceeds thereof (the "Intercreditor Agreement").

   2.3 Creditor has requested that Buyer, which may buy Producer's milk, make payments for Producer's milk in accordance with the terms of this Agreement.

3. **Assignment.**

   3.1 Buyer may purchase milk from Producer. In the event that Buyer purchases milk from Producer, Buyer pays for milk delivered by Producer from the 1st through the 15th of the month on the 1st day of the following month and for milk delivered by Producer from the 16th through the last day of the month, on the 18th day of the following month.

   3.2 Producer hereby assigns to Creditor its right to receive payments from Buyer for Producer's milk as set forth in this Section 3.

1

**EXHIBIT 15**

3.3 Commencing with payments to be made by Buyer on or about June 15, 2021 and continuing monthly thereafter, Producer hereby assigns to Creditor its rights to receive the sum of $335,517.59, or such other amount as Creditor notifies Buyer in writing (such notice to be effective for payments made hereunder not less than fifteen (15) business days following such notice) it is owed in any given month pursuant to Note D and Note E (each defined below), each month from Buyer for milk sold by Producer to Buyer. Buyer shall pay such sums directly to Creditor. To the extent that Creditor sends Buyer a written notice identifying an amount in excess of $335,517.59, the written notice must also contain a representation by Creditor that payment of such greater amount is warranted under the terms of Note D, Note E and the Intercreditor Agreement. Creditor shall apply such payments from Buyer towards Producer's obligations to Creditor pursuant to (i) that certain Promissory Note D dated as of even date herewith given by Producer to Creditor ("**Note D**"), and (ii) that certain Promissory Note E dated as of even date herewith given by Producer to Creditor ("**Note E**"). Buyer shall never be obligated to pay Creditor more than is due and owing by Buyer to Producer. Should the amount due from Buyer to Producer during a given month be less than the amounts assigned in this Section 3.3 and in any other assignments granted by Producer in favor of Creditor, Buyer shall have no obligation to account for the deficiency in succeeding months (subject to Creditor providing written notice of changes in the amount owed under Note D or Note E pursuant to this section).

3.4 The sums paid by Buyer to Creditor in accordance with Section 3.3 hereof and in any other assignments granted by Producer in favor of Creditor shall be drawn first from the sale proceeds of milk produced by Producer's dairy located at and near 700 S. 2725 E., Declo, Idaho 83323. If such proceeds are not sufficient to make the payments identified in Section 3.3, then such payments shall also be drawn from sale proceeds of milk produced by Producer's dairy located at and near the address set forth for Producer above.

4. **Covenant Not to Sue.** In consideration of Buyer entering into this Agreement, Creditor covenants not to sue Buyer on a conversion or other similar claim with respect to Buyer's purchase of Producer's milk.

5. **Contracts Between Buyer and Producer.** Creditor acknowledges and agrees that Buyer is free to amend or terminate its existing milk supply agreements or other agreements with Producer or enter into new agreements with Producer, without the consent of Creditor being necessary. Creditor acknowledges and agrees that it is not, and need not be, a party to such agreements. Creditor acknowledges and agrees that it is not, and shall not be, a third-party beneficiary of such agreements. Notwithstanding the foregoing, the parties to this Agreement acknowledge and agree that nothing in this Section 5 shall be (A) in derogation of Creditor's rights as a secured creditor under Article 9 of the Uniform Commercial Code or (B) in derogation of Creditor's rights against Producer under the Loan Documents (as defined in Note D and Note E).

6. **Perfection of Creditor's Security Interest.** Producer represents that it has granted to Creditor a valid and enforceable security interest in Producer's milk. Creditor represents that it has perfected its security interest in Producer's milk by, among other things, filing a properly completed and duly executed Farm Products Financing Statement (Form UCC-1F) with the Idaho Secretary of State prior to the date hereof. Creditor has attached its UCC-1F, stamped to evidence filing, to this Agreement. Creditor further represents that its security interest is the senior perfected security interest in Producer's milk, subject to the terms of that Intercreditor Agreement between Creditor and Rabo Agrifinance LLC, a Delaware limited liability company ("RAF"), pursuant to which Creditor has consented to payment to RAF from sales proceeds of Producer's milk in accordance with a milk check assignment agreement in favor of RAF of even date herewith. Creditor agrees that during the pendency of this Agreement it shall take all necessary action to ensure that its security interest shall remain perfected and in first priority. Should Creditor's security interest appear at any time, in Buyer's sole discretion, not to be perfected or in first priority, Buyer shall not be obligated to make payments under this Agreement. Creditor and Producer agree that they shall provide Buyer copies of the relevant documentation pertaining to the security interest upon Buyer's request, including without limitation a copy of the Intercreditor Agreement. Creditor

2

acknowledges and agrees that the validity, extent and priority of its security interests in Producer's milk shall be determined in accordance with applicable law and the foregoing described Intercreditor Agreement, and that the validity, extent and priority of its security interests in Producer's milk are not determined by this Agreement.

7. **Representation and Warranties of Producer and Creditor.** The names, addresses and social security and/or federal identification numbers of the Producer and the Creditor are true, complete and correct.

8. **Amendments and Notices.** This Agreement may only be amended by a writing, signed by the Buyer, Producer and Creditor.

9. **Termination or Lapse.** The assignment provided for herein shall terminate on the earlier of (i) Buyer's making of an assigned payment to Creditor during August 2038, or (ii) the receipt by Buyer of written notice of termination signed and dated by the Creditor.

10. **No Buyer Liability.** Buyer accepts this Agreement as a courtesy to Producer and Creditor, Buyer shall not be liable for any claims of any person which may be made against Buyer as a result of this Agreement or payments it makes, or fails to make, hereunder, Producer and Creditor, individually and jointly, agree to indemnify and hold Buyer harmless of and from any and all such claims or damages, including costs and attorney's fees Buyer may incur in connection with defending itself against such claims. In the event that Buyer needs legal services in order to determine a course of conduct relating to, or in light of, this Agreement, then Producer agrees to pay Buyer its costs and attorneys' fees incurred. In the event that Buyer determines, in its sole discretion, that it is necessary that it place disputed funds into an interpleader action, Producer and Creditor, individually and jointly, agree to pay Buyer its costs and attorney's fees incurred in such action. Buyer shall be entitled to include additional payees on the checks delivered to Creditor under this Agreement should Buyer deem it advisable to do so, in its sole discretion.

11. **Setoff.** Creditor agrees that Buyer may set off any obligation of Producer to it against its payments to Producer and that Buyer's right of setoff shall be senior to Creditor's security interest and Creditor's rights under this Agreement.

12. **Choice of Law.** This Agreement shall be interpreted in accordance with the laws and statutes of the State of Idaho, without giving effect to any choice of law provision that would result in the application of the substantive law of another jurisdiction.

13. **Partial Invalidity.** In the event any provision of this Agreement or part thereof shall be determined invalid, void or otherwise unenforceable, the remaining provisions shall remain in full force and effect, and shall in no way be affected, impaired or invalidated, it being understood that such remaining provisions shall be construed in a manner most closely approximating the intention of the parties with respect to the invalid, void or unenforceable provision or part thereof.

14. **Headings.** The headings of the sections in this Agreement shall not be used by any court or factfinder to interpret the language of the Agreement.

*[Signatures on following page.]*

Milk Check Assignment Agreement for Glanbia Foods, Inc.
Millenkamp
Loan Nos. 201559, 201560
109820382.1 0053564-00504

PRODUCER:

CREDITOR:

**MILLENKAMP CATTLE, INC.,**
an Idaho corporation

By: _William J. Millenkamp_ (signature)
Name: William J. Millenkamp
Title: _____

**METLIFE REAL ESTATE LENDING LLC,** a
Delaware limited liability company

By:  MetLife Investment Management, LLC,
Its  investment manager

By: _____
Name: _____
Its: Authorized Signatory and Director

ACCEPTED ON _4-29_, 2021.

**GLANBIA FOODS, INC.**

By: _Russ De Kruyf_ (signature)
Name: Russ De Kruyf
Title: Sr. Dir. Milk Procurement

4

Milk Check Assignment Agreement for Glanbia Foods, Inc.
Millenkamp
Loan Nos. 201559, 201560
109820382.1 0053564-00504

PRODUCER:

**MILLENKAMP CATTLE, INC.,**
an Idaho corporation

By:_____
Name:_____
Title:_____

CREDITOR:

**METLIFE REAL ESTATE LENDING LLC,** a
Delaware limited liability company

By:  MetLife Investment Management, LLC,
Its  investment manager

By: *Jonathan B. Dressler* (signature)
Name: Jonathan B. Dressler
Its: Authorized Signatory and Director

ACCEPTED ON _____, 2021.

**GLANBIA FOODS, INC.**

By:_____
Name:_____
Title:_____

4