CASSIA COUNTY
RECORDED FOR:
TITLEONE - BURLEY
04:10:34 PM  10-20-2022
**2022-004551**
NO. PAGES: 51    FEE: $80.00
**JOSEPH W. LARSEN
COUNTY CLERK**
DEPUTY: EV
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS  66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20 day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Conterra Agricultural Capital, LLC, an Iowa limited liability company ("**Second Lender**"), with offices at 5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266.

### Recitals:

A. First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC.  The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as anytime amended, restated, replaced, supplemented,

85186343.4

**EXHIBIT
21**

TWIN FALLS COUNTY
RECORDED FOR:
TITLEONE - BURLEY
03:45:43 PM  10-20-2022
**2022018721**
NO. PAGES 51　　FEE: $160.00
KRISTINA GLASCOCK
COUNTY CLERK
DEPUTY: CT
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS  66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20 day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Conterra Agricultural Capital, LLC, an Iowa limited liability company ("**Second Lender**"), with offices at 5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266.

### Recitals:

A.　First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as anytime amended, restated, replaced, supplemented,

85186343.4

Instrument # 2224758
JEROME COUNTY, JEROME, IDAHO
10-20-2022    03:43:25 PM    No. of Pages: 51
Recorded for: TITLEONE - BURLEY
MICHELLE EMERSON    Fee: $160.00
Ex-Officio Recorder Deputy: jw
Electronically Recorded by Simplifile

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20 day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Conterra Agricultural Capital, LLC, an Iowa limited liability company ("**Second Lender**"), with offices at 5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266.

### Recitals:

A.  First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as anytime amended, restated, replaced, supplemented,

85186343.4

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Metropolitan Life Insurance Company
Attn: Roberta Black
10801 Mastin Blvd., Suite 700
Overland Park, KS 66210

## Subordination and Intercreditor Agreement

This Subordination and Intercreditor Agreement ("**Agreement**") is made as of this 20 day of October, 2022 by and between MetLife Real Estate Lending LLC ("**MREL**") and Metropolitan Life Insurance Company ("**MLIC**," and collectively with MREL, "**First Lender**"), having a place of business at 10801 Mastin Blvd., Suite 700, Overland Park, KS 66210, and Conterra Agricultural Capital, LLC, an Iowa limited liability company ("**Second Lender**"), with offices at 5465 Mills Civic Parkway, Suite 201, West Des Moines, IA 50266.

### Recitals:

A. First Lender is the owner and holder of certain commercial real estate loans (collectively, the "**First Lender's Loans**") made by Lender to William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC, Idaho Jersey Girls LLC, Idaho Jersey Girls Jerome Dairy LLC, Goose Ranch LLC, Millenkamp Properties, L.L.C., Millenkamp Cattle, Inc., Millenkamp Family LLC, and Millenkamp Properties II, LLC. The Loans are evidenced in part by (i) that certain Promissory Note A, dated as of September 26, 2018, in the original principal amount of $106,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note A**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley Cattle, LLC ("**East Valley**"), Idaho Jersey Girls Jerome Dairy LLC ("**Jersey Girls Dairy**"), Goose Ranch LLC ("**Goose Ranch**"), Millenkamp Properties, L.L.C. ("**Millenkamp Properties**"), Millenkamp Cattle, Inc. ("**Cattle Inc.**"), and Millenkamp Family LLC ("**Family LLC**"); (ii) that certain Promissory Note B, dated as of September 26, 2018, in the original principal amount of $59,400,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note B**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., and Family LLC; (iii) that certain Promissory Note C, dated as of April 15, 2020, in the original principal amount of $13,000,000.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note C**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II LLC ("**Millenkamp Properties II**"); (iv) that certain Promissory Note D, dated as of April 21, 2021, in the original principal amount of $17,954,226.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note D**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; (v) that certain Promissory Note E, dated as of April 21, 2021, in the original principal amount of $15,978,409.00 (as anytime amended, restated, replaced, supplemented, or otherwise modified, "**Note E**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II; and (vi) that certain Promissory Note, dated as of March 12, 2019, in the original principal amount of $5,508,350.00 (as anytime amended, restated, replaced, supplemented,

or otherwise modified, the "**199858 Note**," and collectively with Note A, Note B, Note C, Note D, and Note E, the "**First Lender's Notes**"), the makers of which are William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, Millenkamp Properties II, and Idaho Jersey Girls LLC ("**Jersey Girls LLC**"). William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, Millenkamp Properties II and Jersey Girls LLC are each, individually, a "**Debtor**," and are collectively referred to herein as the "**Debtors**."

B. As security for Note A, Note B, Note C, Note D, and Note E, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Goose Ranch and Millenkamp Properties executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of September 26, 2018 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2018-003845, and in the Official Records of Jerome County, Idaho, under Document No. 2184031, as amended by that certain First Amendment dated April 15, 2020 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2020-001707, and in the Official Records of Jerome County, Idaho, under Document No. 2201724, as amended by that certain Second Amendment dated April 21, 2021 and recorded in the Official Records of Cassia County, Idaho, under Document No. 2021-002100, and in the Official Records of Jerome County, Idaho, under Document No. 2212265 (as anytime further amended, restated, replaced, supplemented, or otherwise modified, the "**2018 Mortgage**"), pursuant to which MREL is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2018 Mortgage Real Property**"), and on certain other collateral (as more particularly described in the 2018 Mortgage and amendments thereto, collectively, the "**2018 Mortgage Property**").

C. As security for the 199858 Note, William John Millenkamp, Susan Jo Millenkamp, East Valley, Jersey Girls Dairy, Jersey Girls LLC, Goose Ranch, Millenkamp Properties, Cattle Inc., Family LLC, and Millenkamp Properties II executed that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, dated as of March 12, 2019 and recorded in the Official Records of Jerome County, Idaho, under Document No. 2190993, and in the Official Records of Twin Falls, Idaho, under Document No. 2019003382 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "**2019 Mortgage**," and collectively with the 2018 Mortgage, the "**First Lender's Mortgages**"), pursuant to which MLIC is the holder of a first-priority lien on certain real property described therein and improvements thereon (the "**2019 Mortgage Real Property**"), and collectively with the 2018 Mortgage Real Property, the "**Real Property**," legally described on **Exhibit A**"), and on certain other collateral (as more particularly described in the 2019 Mortgage and amendments thereto, collectively, the "**2019 Mortgage Property**," and collectively with the 2018 Mortgage Property, the "**Property**").

D. In connection with the First Lender's Notes, Debtors executed that certain Cross Default Agreement, dated as of March 12, 2019 (as anytime amended, restated, replaced, supplemented, or otherwise modified, the "**Cross Default Agreement**"), pursuant to which Debtors agreed, among other things, that a default under any of the First Lender's Notes shall constitute a default under all of the First Lender's Notes.

E. The First Lender's Notes, the First Lender's Mortgages, and all other existing or future documents evidencing, securing, or executed in connection with the First Lender's Loans, together with all documents that now or hereafter modify, amend, extend, restate, replace, or otherwise affect the First Lender's Loans or any of the foregoing documents, are hereinafter sometimes collectively referred to as the "**First Lender's Loan Documents**." First Lender is the owner and holder of the First Lender's Loan Documents.

2

85186343.4

F.      First Lender has agreed to enter into this Agreement to assist Debtors in obtaining financial accommodations, whether by way of loan, commitment to loan, extension of credit or otherwise, from Second Lender, which financial accommodations are or will be secured by, among other things, a mortgage made by Debtors in favor of Second Lender with respect to all or a part of the Property (as it may be amended or extended from time to time, collectively, the "**Second Lender's Mortgage**").

As an inducement to and in consideration of Second Lender's extension of financial accommodations to Debtors, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1.      Pursuant to this Agreement, First Lender hereby consents to the granting of Second Lender's Mortgage and acknowledges that the granting of Second Lender's Mortgage is not a default under First Lender's Mortgages or First Lender's Loan Documents (or such default is hereby waived in this instance only) and does not give rise to a right to accelerate the maturity of any indebtedness secured or evidenced by First Lender's Mortgages (or such acceleration is hereby waived in this instance only).

2.      Second Lender's Mortgage and all right, title and interest (now existing or later acquired), including but not limited to liens, security interests, collateral assignments and rights to payment, of Second Lender in the Property, is and shall always be fully and unconditionally subject and subordinate to First Lender's Mortgages and all right, title and interest (now existing or later acquired), including but not limited, to liens, security interests, collateral assignments and rights to payment, of First Lender in the Property, including, without limitation, as to all of the present and future indebtedness and obligations now or hereafter evidenced or secured by First Lender's Loan Documents in accordance with this Agreement (the "**First Lender's Indebtedness**").

Further, in the event and to the extent that both First Lender and Second Lender have under their respective loan documents certain approval or consent rights over the Property (regardless of whether the obligations or rights are identical or substantially identical), Second Lender agrees that First Lender may exercise the approval rights set forth in First Lender's Loan Documents, and Second Lender shall follow the decision of First Lender with respect to any such action or approval made by First Lender. Without limiting the generality of the foregoing, First Lender shall have all approval, consent and oversight rights in connection with any partial releases of the liens securing First Lender's Indebtedness under First Lender's Loan Documents with respect to the Property, insurance claims or condemnation matters relating to the Property, any decisions regarding the use of insurance proceeds after a casualty loss or condemnation action, the hiring or firing of property managers, the leasing of the Property or any portion thereof, or otherwise related in any way to the Property or First Lender's Indebtedness. Second Lender agrees to cooperate with First Lender in executing and delivering any partial releases of the Property from Second Lender's Mortgage or endorsing any payments representing insurance or condemnation proceeds, within such reasonable period as requested by First Lender.

In addition to the foregoing, First Lender may make such advances and payments under First Lender's Loan Documents as First Lender deems reasonably necessary to preserve and protect the Property and the value thereof. First Lender may also, as it deems appropriate in its sole discretion, increase the principal amount of any of First Lender's loans to an amount such that the aggregate principal owed on First Lender's Loans does not exceed 75% of the loan-to-value ratio based on the then-existing appraised aggregate value of the Property, which, as increased, shall remain secured by First Lender's Mortgages. Second Lender agrees that Second Lender's rights and

3

85186343.4

interests with respect to any Property on which First Lender then holds the senior lien pursuant to this Agreement, shall continue as and are hereby subordinated to such advances and payments.

3. The relative priorities of the parties in the Property as set forth in this Agreement shall control irrespective of the time, order or method of attachment or perfection of the liens or security interests granted in the Property by Debtors or acquired by the parties. The priorities of any liens or security interests of the parties in any assets of Debtors other than the Property are not affected by this Agreement. Without limiting the priorities set forth in Paragraph 2 above, the priorities of the parties in the Property as set forth in this Agreement govern the ultimate control and disposition of casualty insurance and condemnation proceeds and rents from the Property.

4. Without notice to the other party to this Agreement and without in any way impairing or affecting this Agreement, First Lender or Second Lender, from time to time, as they deem proper, may (a) enter into agreements with Debtors as to their respective financial accommodations or with any respective guarantor, third party pledgor or other party who may have pledged property or be responsible for payment of any of Debtors' respective obligations to First Lender or to Second Lender, adjusting rates of interest, modifying payment schedules, extending the time of payment or renewing or otherwise altering the terms of all or any of the obligations, or affecting any security (including without limitation the Property), guaranty, indemnity or pledge underlying any or all such obligations, and/or (b) exchange, sell, surrender, release, subordinate or otherwise deal with any such security (including without limitation the Property), guaranty, indemnity or pledge, or may release any party directly or indirectly liable for or related to any obligations of Debtors to the releasing party. Without First Lender's prior written consent, Second Lender shall not increase the principal amount of the loans secured by Second Lender's Mortgage. Any such increases made in violation of this provision shall not be secured by Second Lender's Mortgage.

    However, no such exchange, sale, surrender, release, subordination or other dealing by one party to this Agreement with respect to the Property shall be deemed to impair or detrimentally affect the other party's interest in the Property, and nothing in this paragraph shall be deemed an appointment by either party of the other as their attorney-in-fact or agent.

5. The agreements contained herein shall continue in full force and effect until all Debtors' obligations and liabilities to either of First Lender or Second Lender, as applicable, are paid and satisfied in full and all corresponding financing arrangements, liens, and security interests are terminated and/or released. At such time, First Lender and Second Lender, as applicable, shall execute and deliver to the other any reasonable documentation evidencing such releases and the termination of this Agreement.

6. All notices under this Agreement shall be in writing and sent to First Lender as set forth in the top left corner of page 1 of this Agreement and to Second Lender at its address as set forth above, or as changed by either party from time to time by written notice in accordance with this paragraph.

7. This Agreement shall be applicable both before and after the filing of any bankruptcy petition by or against any Debtor under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization or relief of debtors (a "**Proceeding**"), and all references to Debtors shall be deemed to apply to a trustee for Debtors and Debtors as debtors-in-possession, and all allocations of payments between First Lender and Second Lender shall, subject to any court order approving the financing of Debtors as debtors-in-possession, continue to be made after the bankruptcy petition filing on the same basis that the payments were to be applied prior to the filing subject to the terms hereof.

4

85186343.4

For as long as First Lender's Indebtedness shall remain outstanding, Second Lender shall not, and shall not solicit any person or entity to, and shall not direct or cause any Debtor to direct or cause either any Debtor or any entity which controls any Debtor (the "**Debtor Group**") to: (i) commence any Proceeding; (ii) institute proceedings to have any Debtor adjudicated a bankrupt or insolvent; (iii) consent to, or acquiesce in, the institution of bankruptcy or insolvency proceedings against any Debtor; (iv) file a petition or consent to the filing of a petition seeking reorganization, arrangement, adjustment, winding-up, dissolution, composition, liquidation or other relief by or on behalf of any Debtor; (v) seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for any Debtor, the Property or any portion thereof; (vi) make an assignment for the benefit of any creditor of any Debtor; (vii) seek to consolidate the Property or any other assets of any Debtor with the assets of any member of the Debtor Group in any proceeding relating to bankruptcy, insolvency, reorganization or relief of debtors; or (viii) take any action in furtherance of any of the foregoing. Second Lender hereby acknowledges and agrees that it shall not be entitled to, and shall not raise against First Lender, any counterclaim, claim, offset or defense in any proceeding to enforce any of First Lender's remedies under First Lender's Loan Documents or related documents.

If Second Lender is a creditor of any of the Debtors in any Proceeding, (i) Second Lender hereby agrees that it shall not make any election, give any consent, commence any action or file any motion, claim, obligation, notice or application or take any other action in any Proceeding by or against Debtor without the prior consent of First Lender, except to the extent necessary to preserve or realize upon Second Lender's interest in its collateral; (ii) First Lender may vote, and Second Lender hereby appoints First Lender as its agent, and grants to First Lender an irrevocable power of attorney coupled with an interest, and its proxy, to vote with respect to any proposed plan of reorganization in respect of which creditors are voting, provided however that First Lender may vote on behalf of Second Lender only if the proposed plan would result in First Lender being "impaired" (as such term is defined in the United States Bankruptcy Code and interpreted in the jurisdiction in which the Proceeding is pending), and (iii) Second Lender shall not challenge the validity or amount of any claim submitted in good faith by First Lender or any valuations of the Property or any portion thereof submitted in good faith by First Lender, or take any other action in such Proceeding which is adverse to (A) First Lender's enforcement of its claim, or (B) First Lender's receipt of adequate protection (as that term is defined in the Bankruptcy Code and interpreted in the jurisdiction in which the Proceeding is pending).

8. Second Lender hereby further covenants and agrees, for itself and all who may claim through it (and this covenant shall be a real property covenant running with the Property), that, except as set forth herein below, until such time as all of First Lender's Indebtedness is indefeasibly paid and discharged in full and no further advances can be made by First Lender to Debtors, Second Lender shall not take any action to commence foreclosure of its liens on or security interest in any of the Property, accept a deed-in-lieu of foreclosure or pursue any other remedies under Second Lender's Mortgage without the prior express written consent from First Lender, which First Lender may give or withhold in its sole and absolute discretion. Second Lender agrees to give First Lender a copy of any notice of default which Second Lender gives any of the Debtors under the Second Lender's Mortgage or any related documents simultaneously with the giving of such notice to Debtors. First Lender shall have the right to cure such default, but First Lender shall at no time be obligated to cure or to continue to cure such default.

9. A default by Debtors under Second Lender's Mortgage shall at First Lender's option be a default under First Lender's Loan Documents. Second Lender waives all rights to require First Lender to marshal the Property for First Lender's Indebtedness or any other property First Lender may at any time have as security for First Lender's Indebtedness and waives all right to require First Lender to

5

Exhibit 21 (Part 1)   Page 9 of 15

proceed first against any guarantor or other person before proceeding against the Property. Second Lender shall not contest the validity, priority or perfection of First Lender's lien, security interest or other interest in any collateral in which Second Lender may also have a lien, security interest or other interest, including the Property. The priorities of First Lender and Second Lender in the Property shall be in accordance with this Agreement, regardless of whether First Lender's security interest or lien on the Property is valid or perfected. First Lender may take action to foreclose or otherwise realize upon, or protect its interest in, the Property, in accordance with its agreements with Debtors or such other party, at any time, without the consent of Second Lender, and Second Lender agrees not to interfere in a manner which would defeat the purpose of this Agreement in connection therewith. If First Lender has agreed to accept a deed-in-lieu of foreclosure with respect to the Property or any portion thereof, then Second Lender agrees to promptly execute releases and discharges of Second Lender's liens and security interests in such Property. In the event of the commencement of any bankruptcy or similar proceeding relating to any Debtor, Second Lender will not object to any motion by First Lender to lift the bankruptcy stay for any purpose, including but not limited to, selling any of the Property. Second Lender shall not acquire, by subrogation (e.g., by payment of real estate taxes) or otherwise (e.g., by providing debtor-in-possession financing to Debtor), any lien, estate, right or other interest in the Property that is or may be prior in right to First Lender's Loan Documents.

10. First Lender shall give Second Lender written notice of any default upon First Lender's Mortgages simultaneously with the giving of such notice to Debtors. A default by Debtors under First Lender's Mortgages shall at Second Lender's option be a default upon Second Lender's loan documents. If Debtors are in default under First Lender's Mortgages, then before First Lender accepts a deed-in-lieu from Debtors, Second Lender shall have the right, but not the obligation, to pay off First Lender within thirty (30) days of notice of Debtors' default, and if Second Lender pays off First Lender, then First Lender shall promptly execute releases and discharges of First Lender's liens and security interests in such Property in a timely manner. If Second Lender does not pay off First Lender within thirty (30) days of Notice of Default of First Lender's Mortgages, then First Lender may, in its sole and absolute discretion, accept a deed-in-lieu of foreclosure with respect to the Property or any portion thereof, and Second Lender shall promptly execute releases and discharges of Second Lender's liens and security interest in such Property.

11. To the extent Second Lender at any time obtains possession of the Property or of any proceeds (as such term is defined by the Uniform Commercial Code) thereof, Second Lender shall hold such Property or such proceeds in trust for First Lender and shall promptly deliver such collateral in original form (or such other form in which such collateral was received) and such proceeds to First Lender. First Lender may further accept and retain payments under the terms of First Lender's Loan Documents from Debtors or such other party or source, including but not limited to, the profits, revenues and income arising from Debtors' business operations and sale of Debtors' property, whether or not such property forms a part of the Property.

12. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof, and this Agreement supersedes any and all of other agreements between any of the parties as to the subject matter hereof.

13. If any provision or provisions, or if any portion of any provision or provisions in this Agreement is found by a court of competent jurisdiction to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decisions, or public policy, and if such court should declare such portion, provision or provisions of this Agreement to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of the parties that such portion, provision or provisions shall be given force to the fullest possible extent that it or they are legal,

6

85186343.4

        valid and enforceable, that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interests of the parties under the remainder of this Agreement shall continue in full force and effect.

14. This Agreement shall be interpreted according to the internal laws of the state of Idaho without regard to conflict of laws principles. This Agreement may be executed in one or more duplicates and/or counterparts as, each of which shall be deemed an original and all of which together shall constitute one and the same original instrument. Debtors shall be responsible for all costs and expense related to this Agreement and the satisfaction of the conditions thereto, including, without limitation, attorneys' fees, title insurance and search charges, escrow and recording fees.

15. The terms and conditions of this Agreement shall be binding upon and solely for the benefit of Second Lender and First Lender and their respective successors and assigns, and no other person, including without limitation Debtors, shall have any right, remedy, claim, benefit, priority or other interest under, or because of the existence of, this Agreement, whether as third party beneficiary or otherwise.

16. Words in the singular include the plural, and words in the plural include the singular, as the context may require.

17. Each of the parties hereto has entered into its own respective loans or financial accommodations to the Debtors and any related parties based upon its own independent investigations and due diligence, and neither party hereto makes any representation or warranty whatsoever with respect to the Debtors' financial status or ability to repay any such loan or financial accommodation to the other party hereto or with respect to any other matter. The parties hereto shall each be entitled to manage and administer their respective loans and financial accommodations to Debtors and any related parties in their sole discretion except as expressly set forth herein. No party hereto shall have any claim or cause of action against the other party hereto arising out of the administration or management of its or such other party's management or administration of its or such other party's loans or financial accommodations to Debtors and any related parties except as expressly set forth herein. Nothing set forth herein shall create or evidence a joint venture, partnership or agency relationship between the parties hereto.

7

85186343.4

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first above written.

First Lender:

**METLIFE REAL ESTATE LENDING LLC,**
a Delaware limited liability company

By:  MetLife Investment Management, LLC,
    a Delaware limited liability company,
    its investment manager

By: _/s/ Douglas A. Gibson_
Name: Douglas A. Gibson
Title: Authorized Signatory and Director

**METROPOLITAN LIFE INSURANCE COMPANY,**
a New York corporation

By:  MetLife Investment Management, LLC,
    a Delaware limited liability company,
    its investment manager

By: _/s/ Douglas A. Gibson_
Name: Douglas A. Gibson
Title: Authorized Signatory and Director

Second Lender:

**CONTERRA AGRICULTURAL CAPITAL, LLC**
an Iowa limited liability company

By: _____
Name: _____
Title: _____

8

85186343.3

STATE OF ___MN___ )
                  ) ss.
COUNTY OF ___Dakota___ )

    Before me, the undersigned Notary Public in and for the State and County aforesaid, personally appeared Douglas A. Gibson, with whom I am personally acquainted, and who acknowledged himself to be an Authorized Signatory and Director of MetLife Investment Management, LLC, a Delaware limited liability company, the investment manager of MetLife Real Estate Lending LLC, a Delaware limited liability company, and that he, on behalf of such limited liability company as investment manager of such company, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MetLife Investment Management, LLC, the investment manager of MetLife Real Estate Lending LLC by himself as Authorized Signatory and Director of such limited liability company as his free act and deed and the free act and deed of said limited liability company as investment manager of such company.

WITNESS my hand and official seal this ___12___ day of October, 2022.

[SEAL]

PHILLIP ALLEN THAYER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2026

Signature: _____
Notary Public in and for said
County and State

My Commission Expires: ___1/31/2026___

9

STATE OF  M N            )
                         ) ss.
COUNTY OF  Dakota        )

    Before me, the undersigned Notary Public in and for the State and County aforesaid, personally appeared Douglas A. Gibson, with whom I am personally acquainted, and who acknowledged himself to be an Authorized Signatory and Director of MetLife Investment Management, LLC, a Delaware limited liability company, the investment manager of Metropolitan Life Insurance Company, a New York corporation, and that he, on behalf of such limited liability company as investment manager of such company, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of MetLife Investment Management, LLC, the investment manager of Metropolitan Life Insurance Company by himself as Authorized Signatory and Director of such limited liability company as his free act and deed and the free act and deed of said limited liability company as investment manager of such company.

WITNESS my hand and official seal this _____12_____ day of October, 2022.

[SEAL]



PHILLIP ALLEN THAYER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2026

Signature: _____
Notary Public in and for said
County and State

My Commission Expires: 01/31/2026

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first above written.

First Lender:

**METLIFE REAL ESTATE LENDING LLC,**
a Delaware limited liability company

By: MetLife Investment Management, LLC, a Delaware limited liability company, its investment manager

By: _____
Name: Douglas A. Gibson
Title: Authorized Signatory and Director

**METROPOLITAN LIFE INSURANCE COMPANY,**
a New York corporation

By: MetLife Investment Management, LLC, a Delaware limited liability company, its investment manager

By: _____
Name: Douglas A. Gibson
Title: Authorized Signatory and Director

Second Lender:

**CONTERRA AGRICULTURAL CAPITAL, LLC**
an Iowa limited liability company

By: /s/ Paul Erickson
Name: Paul Erickson
Title: President & CEO

8

85186343.3

STATE OF IOWA
COUNTY OF POLK

Before me, the undersigned authority, on this day personally appeared
Paul Erickosn, known or proved to me according to law to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he voluntarily executed the same for the purposes of consideration therein expressed, and in the capacity stated.

Given under my hand and seal this 20th day of October, 20 22.

*Lydia Denniston*
Notary, State of Iowa

Printed Name: Lydia Denniston
My Commission Expires: 4/11/2025

**LYDIA DENNISTON**
Commission Number 838684
My Commission Expires
April 11, 2025