# EXHIBIT 7

A.M. _0940_ FILED P.M. _____

FEB 16 2024

TRENT TRIPPLE, Clerk
By BRYCE MAY
DEPUTY

Sheila R. Schwager, ISB No. 5059
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5261
Email: sschwager@hawleytroxell.com

Attorneys for Plaintiff Rabo AgriFinance LLC

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| RABO AGRIFINANCE LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>MILLENKAMP CATTLE, INC., an Idaho corporation, EAST VALLEY CATTLE, LLC, an Idaho limited liability company, MILLENKAMP PROPERTIES II LLC, an Idaho limited liability company, MILLENKAMP FAMILY LLC, an Idaho limited liability company, IDAHO JERSEY GIRLS JEROME DAIRY LLC, an Idaho limited liability company, MILLENKAMP PROPERTIES, L.L.C., an Idaho limited liability company, IDAHO JERSEY GIRLS, LLC, an Idaho limited liability company, GOOSE RANCH LLC, an Idaho limited liability company, BLACK PINE CATTLE LLC, an Idaho limited liability company, MILLENKAMP ENTERPRISES LLC, an Idaho limited liability company, SUSAN MILLENKAMP as Trustee of the WJM 2012 TRUST, WILLIAM MILLENKAMP as Trustee of the SJM 2012 TRUST, WILLIAM | Case No. CV01-24-01156<br><br>ORDER APPOINTING RECEIVER |

ORDER APPOINTING RECEIVER - 1

JOHN MILLENKAMP, an individual; and
SUSAN JO MILLENKAMP, an individual;

     Defendants.

**WHEREAS** this matter has come before this Court upon the (a) Verified Petition for Appointment of a Receiver filed by Plaintiff, Rabo AgriFinance LLC, formerly known as Rabo AgriFinance, Inc., a Delaware limited liability company ("**Rabo**"), as "**Agent**" for the secured Lenders ("**Lenders**"), by and through its attorneys of record, Hawley Troxell Ennis & Hawley, LLP; (b) Declaration of Mike Hayes in Support of Verified Petition for Appointment of Receiver; and (c) Declaration of Matt Mckinlay In Support of Verified Petition for Appointment of a Receiver, for the appointment of the Receiver, CFO Solutions, LLC d/b/a Amplēo ("**Amplēo**") (the "**Receiver**"), pursuant to I.C. §§ 8-601A(2) and 8-601(6) and in regard to certain personal property, business operations, and potentially Real Property, as more particularly described below (collectively "**Petition**");

**WHEREAS** the Defendants Millenkamp Cattle, Inc., an Idaho corporation, Idaho Jersey Girls LLC, an Idaho limited liability company, East Valley Cattle, LLC, an Idaho limited liability company, Millenkamp Properties, L.L.C., an Idaho limited liability company, Millenkamp Properties II, LLC, an Idaho limited liability company, Millenkamp Family LLC, an Idaho limited liability company, Goose Ranch LLC, an Idaho limited liability company, Idaho Jersey Girls Jerome Dairy LLC, an Idaho limited liability company, Black Pine Cattle LLC, an Idaho limited liability company, Millenkamp Enterprises, LLC, an Idaho limited liability company, Susan Millenkamp as Trustee of the WJM 2012 Trust, William Millenkamp as Trustee of the SJM 2012 Trust, William John Millenkamp, and Susan Jo Millenkamp, ("**Borrowers**" or "**Defendants**"), have granted Rabo, in its capacity as Agent for the benefit of Lenders, a security interest to and in substantially all of Borrowers' personal property (the "**Collateral**") to secure the Loan (as defined

ORDER APPOINTING RECEIVER - 2

in the Petition).  The Collateral includes (among other interests) all Accounts; Farm Products (including, but not limited to) Livestock; Payment Intangibles; Deposit Accounts; Commodity Contracts; and notably, Borrowers' inventory, which consists of (in part) milk, other dairy products, and certain receivables from the sales of Borrowers' milk and other dairy products (the "**Milk Receivables**");

WHEREAS Metropolitan Tower Life Insurance Company and MetLife Real Estate Lending LLC (collectively, "**MetLife**") have also each extended loans (collectively, the "**MetLife Loans**") to certain Borrowers (collectively, "**MetLife Borrowers**"), of which the Borrowers have granted security interests to MetLife, which are also granted to the Lenders.  The MetLife Loans are secured by (i) the MetLife Borrowers' real property ("**Real Property**") and (ii) certain of MetLife Borrowers' personal property, including (a) crops grown after a foreclosure; (b) all wells, underground pipelines, sprinklers, and similar irrigation equipment located at the real property, as well as all lines, valve openers, pipes, and similar items pertaining to such irrigation equipment; and (c) all milking equipment located at the Real Property ("**MetLife Real Estate Collateral**"). The MetLife Loans are further secured by the Milk Receivables ("**MetLife Milk Claim**," and, collectively with the MetLife Real Estate Collateral, the "**MetLife Collateral**");

WHEREAS, on October 20, 2022, a Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (Second Priority), was issued in favor of the Agent on behalf of the Lenders to secure any and all obligations owed to the Lenders was recorded in Cassia County as Instrument No. 2022-004552, Twin Falls County as Instrument No. 2022018722, and Jerome County as Instrument No. 2224759 (collectively, the "**Mortgage**").  The Mortgage grants an interest in the MetLife Real Estate Collateral to the Lenders, in a second secured position to MetLife's position;

WHEREAS, the Collateral and all other personal property interests of the Borrowers, are collectively referenced herein as the "**Receivership Assets**."  None of the Receivership Assets includes personal property of an individual that is used primarily for personal, family, or household

ORDER APPOINTING RECEIVER - 3

purposes or any property of an individual that is exempt from execution under Idaho law.  Further none of the Receivership Assets shall include the MetLife Real Estate Collateral, the MetLife Collateral (that is not already included as Collateral, including but not limited to Milk Receivables and dairy products), or the Real Property identified in the Mortgage, unless MetLife provides consent;

**WHEREAS,** the Agent and MetLife are parties to the First Intercreditor Agreement and Second Intercreditor Agreement (as defined in the Petition);

**WHEREAS,** the Agent and the Borrowers negotiated in good faith and consented to the entry of this Order on the modified terms set forth herein;

**WHEREAS** the Court finds that, based upon the record in these pleadings, the appointment of the Receiver in this action is necessary and appropriate for the purposes of marshaling and preserving the Receivership Assets; and

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities (defined below) and the Receivership Assets, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Court hereby takes jurisdiction and authority of the Receivership Entities (defined below) and the Receivership Assets, of whatever kind and wherever situated of Millenkamp Cattle, Inc., an Idaho corporation; Idaho Jersey Girls LLC, an Idaho limited liability company; East Valley Cattle, LLC, an Idaho limited liability company; Millenkamp Properties, L.L.C., an Idaho limited liability company; Millenkamp Properties II, LLC, an Idaho limited liability company; Millenkamp Family LLC, an Idaho limited liability company; Goose Ranch LLC, an Idaho limited liability company; Idaho Jersey Girls Jerome Dairy LLC, an Idaho limited liability company; Black Pine Cattle LLC, an Idaho limited liability company; Millenkamp

ORDER APPOINTING RECEIVER - 4

Enterprises, LLC, an Idaho limited liability company; Susan Millenkamp as Trustee of the WJM 2012 Trust; William Millenkamp as Trustee of the SJM 2012 Trust; William John Millenkamp; and Susan Jo Millenkamp (all of the above, collectively, the "**Receivership Entities**"). The Court hereby appoints the Receiver to take possession of the Receivership Assets and the Receivership Entities.

2.      Until further Order of this Court, or based on the terms of this Order, Amplēo is hereby appointed to serve as receiver (the "**Receiver**"), for the estates of the Receivership Entities ("**Receivership Estate**"). Subject to the rights of the Lenders and MetLife, the Receiver shall perform the duties set forth herein and in so doing shall care for, manage, preserve, and protect the Receivership Estate in the manner the Receiver believes in the exercise of the Receiver's reasonable business judgment, to be the most beneficial to the Receivership Estate, subject to the terms herein.

3.      The Receiver shall not be deemed in possession of the Receivership Estate until it has delivered, by fax or by email, a written notice declaring the start date and time of its possession ("**Commencement Notice**"), so as to allow time for the Receiver to take such steps as are needed to operate the Receivership Estate; provided that the Borrowers acknowledge and agree that the Receiver shall have the authority granted in this order effective immediately upon entry of this Order and shall comply accordingly.

4.      Nothing contained in this Order shall act to divest the Lenders or MetLife in any way from any interest in the Receivership Assets, as applicable, or enjoin or otherwise prohibit Rabo, on behalf of the Lenders, or MetLife from pursuing remedies as provided in their respective loan documents or applicable law.

**I.      GENERAL POWERS AND DUTIES OF RECEIVER**

5.      Subject to the other terms of this Order, the Operation Agreement and Bankruptcy Agreement (each defined below), the Receiver shall have all management, powers, authorities,

ORDER APPOINTING RECEIVER - 5

rights, and privileges (including the attorney client privilege and work product protection for matters arising after the entry of this Order) heretofore possessed by the officers, directors, managers, and general and limited partners of the Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity or under applicable law, including, without limitation, the power in the Receiver's reasonable business judgment to resolve and take all corporate actions, to contract, to sue, to be sued, to continue any business or business activities of the Receivership Estate, to settle, compromise, litigate, or contest any matter for and on behalf of the Receivership Estate, and, subject to the Bankruptcy Agreement (defined below), to commence any insolvency or bankruptcy proceeding, to liquidate, wind down, dissolve the Borrowers. Notwithstanding anything to the contrary in this Order, the Receiver shall not have the authority to change, alter, amend, or otherwise modify the corporate structure of the Borrowers without prior approval of this Court.

6.      The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys, and other agents of the Receivership Entities shall have no authority with respect to the Receivership Entities' operations or assets, except for the Operation Agreement and to the extent as may hereafter be expressly granted by the Receiver.  Except for the Operation Agreement and the Bankruptcy Agreement, the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver and subject to the terms of the Operation Agreement.  Subject to the Operation Agreement, and effective 60 days after entry of this Order, the Receiver shall assume and control the operations of the Receivership Entities and shall have the authority to dismiss any trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of the Receivership Entities, and shall pursue and preserve all claims of the

ORDER APPOINTING RECEIVER - 6

Receivership Entities.

7.      Except as provided in the Operation Agreement and the Bankruptcy Agreement, no person holding or claiming any position of any sort with any of the Receivership Entities, or the Receivership Assets shall possess any authority to act by or on behalf of any of the Receivership Entities or the Receivership Assets.

8.      Subject to the specific provisions set forth in this Order, the Receiver shall have the following general powers and duties:

a)      *Investigation*. The power, in the exercise of the Receiver's reasonable business judgment, to use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including but not limited to the Receivership Assets, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, that the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly.  The Borrowers agree to cooperate and provide the Receiver with all support, including access to books and records, employees and other information requested by the Receiver to assist in his investigations;

b)      *Possession*. The power, in the exercise of the Receiver's reasonable business judgment, to take immediate and exclusive custody or possession of the Receivership Assets, wherever located, and irrespective of in whose possession, custody, or control the Receivership Assets reside, and to take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets, including:  (1) at the request of the Receiver, the right to obtain the assistance of law enforcement, to whom this Order shall constitute a writ of replevin ordering such law enforcement to use all reasonable means necessary to obtain and deliver the Receivership Assets to the Receiver need of obtaining any other form of writ or order; (2) selling or exchanging assets as necessary to achieve

ORDER APPOINTING RECEIVER - 7

that objective, subject to the Sale Limitation (defined below); (3) taking custody, control and possession of records relevant thereto from the Receivership Entities; and (4) suing for and collecting, recovering, receiving, and taking into possession from third parties all Receivership Assets and records relevant thereto;

       c)     *Operation and Management*. Subject to the Operation Agreement, the power, in the exercise of the Receiver's reasonable business judgment, to manage, control, maintain, oversee, preserve, and safeguard the Receivership Assets, and to make such expenditures and repairs as are needed to keep the Receivership Assets in good and saleable condition, and the power to take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees of the Receivership Entities, as applicable;

       d)     *Use of Receivership Assets*. The power, in the exercise of the Receiver's reasonable business judgment to make payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business and subject to the Operating Budget (defined below), in discharging his duties as Receiver, and shall ensure that Receivership Assets and proceeds and revenues derived therefrom are properly received, collected, and recorded;

       e)     *Receiver's Agents*. Subject to the Operation Agreement, the power, in the exercise of the Receiver's reasonable business judgment, to appoint or hire such agents, independent contractors, and employees as may be needed, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, in its discretion, to assist the Receiver in carrying out its responsibilities and discharging its duties hereunder; *provided* that the amount of compensation paid to such agents or firm must be comparable to that charged on an arm's length basis by similar companies for similar services and in accordance with the Operating Budget;

       f)     *Receiver's Counsel*. Subject to the Operating Budget, the power, in the exercise of the Receiver's reasonable business judgment, to hire independent legal counsel, if needed and as

ORDER APPOINTING RECEIVER - 8

determined by Receiver in its sole discretion, and to pay such counsel for their services at such reasonable rates Receiver deems appropriate for the services;

g)    *Subpoena Power.* The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Idaho Rules of Civil Procedure;

h)    *Power to Sue and be Sued.* Subject to the Operation Agreement, and effective 60 days after entry of this Order, the power, in the exercise of the Receiver's reasonable business judgment, to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver; likewise, the power to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate;

i)    *Reimbursement of Receiver.* Subject to the Operating Budget, the power to reimburse Receiver for its reasonable out-of-pocket expenditures as well as the actual and reasonable cost of any support staff as Receiver may provide to the Receivership Estate, including any contractors or employees who directly assist Receiver in carrying out its duties;

j)    *Existing Bank Accounts.* The power, in the exercise of the Receiver's reasonable business judgment, to issue demands for the freezing and turnover of funds upon any financial institution which Receiver has determined is a depository of funds belonging to, or arising from, any Receivership Entity, whether such accounts be titled in the name of a Receivership Entity or not, and to indemnify the institution upon whom such demand is made on behalf of the Receivership Estate if Receiver deems such indemnification necessary and to maintain an account with Rabo, in the name of the Receivership Estate, for the deposit of funds from the Receivership Assets;

k)    *Post Office Box.* The power to issue demands in the name of the Receivership Estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal or safe deposit boxes as may have been used by Receivership Entities

ORDER APPOINTING RECEIVER - 9

and/or their agents for the receipt of income and other mail related to the Receivership Assets;

l)      *Sources of Revenue*. The power to identify all revenue sources, including those related to any receivables, and make demand upon all payees or any other persons or entities to make remittances of future sums and past due balances solely to Receiver;

m)      *Pre-Receivership Bills*. Subject to the Operating Budget, the power, in the exercise of the Receiver's reasonable business judgment, to pay current any expenses related to the Receivership Assets incurred by Receiver subsequent to its appointment, including without limitation, Receiver's fees and administrative expenses, with the limitation that Receiver may not use funds of the Receivership Estate to pay any bills for goods or services or to Receivership Entities and/or their agents, arising prior to the date of the entry of this Order appointing Receiver unless such payment is reasonably necessary to enable Receiver to continue to preserve and safeguard the Receivership Assets as determined by Receiver;

n)      *Insurance*. The power, in the exercise of the Receiver's reasonable business judgment, to determine whether adequate insurance is in place, and if not, to order and pay for such insurance from available funds, including but not limited to adding parties to the policy including the Receiver and increasing insurance coverage of the policies;

o)      *Advance by Rabo, the Agent, and/or MetLife*. Provided nothing in this paragraph or this Order shall be construed to require the Agent, Rabo, or MetLife to advance, lend, or otherwise disburse any amount to Receiver under any circumstances; the power, in the exercise of the Receiver's reasonable business judgment, to borrow from the Agent, Rabo, and/or MetLife, on arm's-length terms, with or without the necessity of issuing receiver's certificates, such funds as Receiver may require to cover operating expenses of the Receivership Estate, including but not limited to Receiver's and its professionals' fees and costs, as determined by Receiver in the exercise of the Receiver's reasonable business judgment.  As protective advances under the terms of their respective loan documents, Agent, Rabo, and/or MetLife may add the amount of such

ORDER APPOINTING RECEIVER - 10

advances to the balance of the Loan owed to the Lenders (as defined in the Petition) and the
MetLife Loans, respectively, and shall be entitled to earn interest on such advances at the rate then
payable under the applicable loan agreements evidencing such obligations;

p)      *Operating Budget*. Within thirty (30) days from the date of appointment, or as
extended by written consent of the Agent, Receiver shall prepare projected monthly operating
budgets for the Receivership Assets, based upon operating data obtained from Receivership
Entities and other sources where the use of a budget is appropriate, with such budget to be approved
by the Agent, in its reasonable discretion ("**Operating Budget**"), and the Receiver will file such
Operating Budget with the Court under seal.  The Operating Budget may be amended from time-
to-time with the consent of Agent.  The Receiver will review actuals monthly against the Operating
Budget, and will review such results with Agent and other parties as requested;

q)      *Distribution of Funds*. After Receiver pays its operating costs from the proceeds
generated from the Receivership Assets according to the Operating Budget, Receiver shall make
distributions of funds to the Agent and MetLife up to and including the amount of their respective
secured claims, subject to the First Intercreditor Agreement and Second Intercreditor Agreement
(as defined in the Petition), and subject to the terms of this Order.  The Receiver, in its discretion,
may move the court for an order authorizing proposed distributions;

r)      *Monthly Reporting*. Receiver shall provide a monthly summary of revenues and
disbursements on a "cash reporting basis," as that term is commonly understood within the
accounting profession, within a reasonable time period, but in no event later than the 15th day of
the following month, to the Agent, MetLife, the Borrowers, the Court, and/or any other interested
party who requests and is entitled to such a report.  Upon conclusion of the receivership, Receiver
shall file with the Court a final summary accounting for the full term of the Receivership Estate.
Any such reports or summaries, if filed with the Court, shall be filed under seal;

s)      *Payment of Receiver*. Receiver shall be entitled to pay itself, from Receivership

ORDER APPOINTING RECEIVER - 11

Estate funds in Receiver's possession, a fee of $325 per hour for time incurred by Matt McKinlay, and between $100 - $295 per hour for other staff members of the Receiver (subject to customary yearly rate increases), plus reimbursement of actual out-of-pocket expenses at costs subject to Section 61 below, pursuant to the terms of the Operating Budget.  Travel will be billed at ½ time. The Agent, in its discretion, may fund any amounts necessary for the Receiver's and its counsels' fees, which advances shall be added to the Agent's secured loans as set forth in Paragraph 8(o), above; and

t)      *Disbursements.* Notwithstanding anything to the contrary in this Order, the Receiver shall not expend or disburse more than the amount set forth in the Operating Budget, and nothing in the Order appointing Receiver shall obligate the Agent, Rabo, or MetLife to lend or disburse any funds or amounts to Receiver.

## II.      OPERATION AGREEMENT

9.      For a period of sixty (60) days from the entry of this Order, Mr. William Millenkamp shall continue as the business operator of the Borrowers' businesses and shall have exclusive management control over the businesses, provided that Mr. William Millenkamp shall report to, cooperate with and consult with the Receiver (including the Receiver's staff) in connection with the performance of any and all of such duties (the "**Operation Agreement**").  The Operation Agreement shall provide Mr. Millenkamp with oversight over and the ability to direct the day-to-day operation of the Receivership Assets in the Borrowers' businesses.  For the avoidance of doubt, the intent of the Operation Agreement is to provide Mr. Millenkamp with the necessary corporate authority to continue to manage the day-to-day operations of the Borrowers' businesses consistent with past practices.  Upon the expiration of the sixty (60) day period, Mr. Millenkamp's authority with respect to the management control over the businesses will terminate and revert back to the Receiver, unless the Receiver and Mr. Millenkamp agree otherwise. Mr. Millenkamp shall be entitled to receive a salary of $250,000 per year for so long as he continues

to perform under the Operation Agreement.  For so long as the Operation Agreement is in effect, the Receiver and Mr. Millenkamp shall jointly engage and communicate with milk customers, feed vendors, farmers, other creditors, and stakeholders, including with respect to the resolution of claims asserted by litigants regarding feed and other supplies necessary to adequately feed and care for the Borrowers livestock ("**Stakeholder Communications**").  During the term of the Operation Agreement, Mr. Millenkamp shall not operate any competing dairy operations that are not otherwise owned by the Borrowers and/or subject to the Agent's security interests.  For the avoidance of doubt, Mr. Millenkamp shall not, and does not have the authority under this Order or otherwise, to enter into any contracts, agreements or otherwise bind the Borrowers.

III.    **FINANCIAL ACCOMMODATION**

10.    The Agent, on behalf of the Lenders, agrees that for a period of sixty (60) days from the entry of the Order, interest shall (a) be paid current at a rate of SOFR plus 4.00%; and (b) accrue at the rate of 4.11%, but will not be paid during such sixty (60) period unless the Agent expressly agrees to extend such accrual in writing.

11.    The Receiver shall take all reasonable and necessary actions to enable the Agent to perfect its security interests in the title to the Borrowers' vehicles and equipment.

IV.    **ACCESS TO INFORMATION**

12.    Within five (5) business days of the entry of this Order, the officers, directors, agents, managers, general and limited partners, trustees, and employees of the Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, login credentials and passwords for all such records and accounts, all devices used for two-factor authentication of such accounts, and all other instruments and papers.  Further, the Receiver has the authority to obtain from attorneys, accountants (including

ORDER APPOINTING RECEIVER - 13

CPAs), and past officers, directors, agents, managers, general and limited partners, trustees, and employees of the Receivership Entities, as well as those acting in their place, all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, login credentials and passwords for all such records and accounts, all devices used for two-factor authentication of such accounts, and all other instruments and papers.

13.     Within seventy-four (74) days of the entry of this Order, and unless waived by the Receiver, the officers, directors, agents, managers, general and limited partners, trustees, and employees of the Receivership Entities, as well as those acting in their place, shall serve upon the Receiver a sworn statement, listing (a) the identity, location and estimated value of all Receivership Assets; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Entities; and (c) the names, addresses and amounts of claims of all known creditors of the Receivership Entities.

14.     The Receivership Entities' present officers, directors, agents, attorneys, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Idaho Rules of Civil Procedure.

15.     The Receiver shall have authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Idaho Rules of Civil Procedure and applicable Local Rules.

ORDER APPOINTING RECEIVER - 14

16.     While employed by the Receivership Entities' officers, directors, agents, managers, shareholders, members, employees, and general and limited partners, and any persons acting for or on behalf of the Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### V.     ACCESS TO BOOKS AND RECORDS

17.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, software applications and passwords and all other physical or electronic documents or instruments relating to the Receivership Entities.  All persons and entities having control, custody or possession of any Receivership Assets are hereby directed to turn such property over to the Receiver within five (5) business days of the entry of this Order or, if not sooner, at the Receiver's request, including information necessary for Receiver to exercise full and exclusive control over all bank accounts containing revenues derived from the Receivership Assets, as well as all authorizations or other documentation necessary or desirable for the Receiver to exercise full and exclusive control over such bank accounts or other such accounts. The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents and/or employees.

18.     The Borrowers hereby agree and shall fully cooperate with any and all actions taken by the Receiver in connection with this section V of this Order.  The Borrowers and its officers, directors, employees, and advisors hereby agree and shall immediately provide the Receiver with full access to financial information, records, legal documents, employees, and records, including but not limited to information with respect to milk assignments from the Borrowers to third parties

ORDER APPOINTING RECEIVER - 15

including affiliates of the Borrowers.  The Receiver shall have the right, and the Borrowers shall cooperate in obtaining, verifying information with respect to milk assignments from any and all dairy customers of the Borrowers.

19.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Entities that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

a)     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities or the Receivership Assets except upon instructions from the Receiver;

b)     Within five (5) business days of receipt of that notice, serve on the Receiver a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

c)     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## VI.     ACCESS TO REAL AND PERSONAL PROPERTY

20.     Subject to the terms of the Operation Agreement, the Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

ORDER APPOINTING RECEIVER - 16

59797.0002.16820775.3

21.     The Receiver shall acquire from Receivership Entities and all of their agents or employees in possession thereof, access to keys, lock combinations, security systems, passcodes, devices used in two-factor authentication for any account, and other means to access locked areas relating to the Receivership Assets, and all access credentials necessary and desirable for Receiver to exercise full and exclusive control over the Receivership Entities, including control over computer systems controlling in whole or in part the Receivership Entities, including login names, passwords, and access codes. Effective sixty (60) days after entry of this Order, the  Receiver may change any and all such access credentials and any and all locks or lock combinations, as he deems necessary.

22.     Subject to MetLife's consent as to the Real Property, and effective sixty (60) days after entry of this Order, the Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures.

23.     Consistent with the terms of this Order, the Receiver is entitled to access and occupy the Real Property as part of the Receiver's duties under this Order.

24.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

25.     Upon the request of the Receiver, the county Sheriff is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VII.     NOTICE TO THIRD PARTIES

26.     The Receiver shall promptly provide notice of the Receiver's appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and

ORDER APPOINTING RECEIVER - 17

general and limited partners of the Receivership Entities, and to such other persons as the Receiver

deems necessary or advisable to effectuate the operation of the Receivership Estate. All notices,

requests, waivers, consents, or other communications under this Order shall be in writing and shall

be deemed to have been duly given if (a) delivered personally, (b) sent by next-day or overnight

delivery, (c) sent by email with a confirming response, or (d) sent by facsimile with a confirming

response, to the addressee as follows:

> <u>If to the Receiver</u>:
>
> > Ampléo
> > Attn: Matthew McKinlay
> > 13601 W. McMillan Road, #102
> > PMB 320
> > Boise, ID 83713
> > mmckinlay@ampleo.com
> >
> > Proposed Counsel to Receiver
> > Parsons Behle & Latimer
> > Attn: Brian M. Rothschild
> > 800 W Main St Suite 1300
> > Boise, ID 83702
> > BRothschild@parsonsbehle.com
>
> <u>If to the Receivership Entities</u>:
>
> > Jay Kornfeld
> > Bush Kornfeld
> > 601 Union St., #5000
> > Seattle, WA 98101
> > jkornfeld@bskd.com
> >
> > Matthew T. Christensen
> > Johnson May
> > 199 N Capitol Blvd., Suite 200
> > Boise, Idaho 83702
> > <u>mtc@johnsonmaylaw.com</u>

ORDER APPOINTING RECEIVER - 18

If to Rabo AgriFinance LLC:

    Andrew Schoulder
    Norton Rose Fulbright US LLP
    1301 Avenue of the Americas
    New York, New York 10019-6022
    Andrew.schoulder@nortonrosefulbright.com

    Sheila R. Schwager
    Hawley Troxell Ennis & Hawley LLP
    877 W. Main St. 200
    Boise, ID 83702
    sschwager@hawleytroxell.com

If to MetLife:

    Glenn Siegel
    Morgan Lewis & Bockius LLP
    101 Park Ave.
    New York, NY 10178-0060
    glenn.siegel@morganlewis.com

    Jason Alderson
    Morgan Lewis & Bockius LLP
    101 Park Ave.
    New York NY 10178-0060

    Kimball D. Gourley
    Jones Williams Fuhrman Gourley
    225 N 9th Street, Suite 820
    Boise, Idaho 83702
    kgourley@idalaw.com

27.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to the Receivership Entities shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entities had received such payment.

28.    In furtherance of the Receiver's responsibilities in this matter, the Receiver is

ORDER APPOINTING RECEIVER - 19

authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

29.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail, which is related, directly or indirectly, to the business, operations or activities the Receivership Entities (the "**Receiver's Mail**"), including all mail addressed to, or for the benefit of, any Receivership Entity. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. Any mail to a Receivership Entity appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Entities. The Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

30.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

59797.0002.16820775.3

## VIII.    INJUNCTION AGAINST INTERFERENCE WITH RECEIVER AND BORROWERS' COOPERATION

31.    Subject to the terms of this Order (including, but not limited to, the Operation Agreement), the Receivership Entities and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

a)    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets pursuant to this Order; such prohibited actions include but are not limited to, directly or indirectly, transferring, selling, leasing, disposing of, encumbering, injuring, converting, gifting, or otherwise interfering with the Receivership Assets; any act that will, or will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Assets (including the proceeds thereof); collecting, attempting to collect, or keeping the proceeds derived from the Receivership Assets; using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

b)    Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

c)    Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, including creating a security interest in, or disposing of the whole or any part of the Receivership Assets (including the proceeds thereof), enforcing judgments, assessments or claims against any Receivership Assets or the Receivership Entities, attempting to modify, cancel, terminate, call, extinguish, revoke or

ORDER APPOINTING RECEIVER - 21

accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Entities or which otherwise affects any Receivership Assets; or

       d)      Interfere with or harass the Receiver or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

      32.     While employed by the Receivership Entities, the Receivership Entities' present officers, directors, agents, managers, shareholders, members, employees, accountants, consultants, debtors, creditors, and general and limited partners, and any persons acting for or on behalf of the Receivership Entities, shall cooperate with and assist the Receiver in the performance of his duties.

      33.     The Receiver shall promptly notify the Court of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

     **IX.**       **MANAGING ASSETS**

      34.     The Receiver may establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "**Receivership Funds**") for the Receivership Estate.

      35.     The Receiver's deposit account shall be entitled "**Receiver's Account, Estate of Millenkamp Entities**," or other name designating the special nature of the accounts, together with the name of the action.

      36.     Subject to the Sale Limitation (defined below), and the interests of the Agent on behalf of the Lenders and MetLife, as applicable, the Receiver may, without further Order of this Court, transfer, monetize, compromise, or otherwise dispose of any Receivership Assets, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate. With respect to the Receivership Assets that are secured to the Lenders or MetLife (to the extent MetLife has consented to the Real Property and MetLife Real Estate Collateral being part of the Receivership Assets), as appliable, having a value (a) in excess of One

ORDER APPOINTING RECEIVER - 22

Million Dollars, the Receiver shall consult with the Agent or MetLife, respectively and as applicable, to obtain written consent with respect to said transaction, which consent shall be in the sole and absolute discretion of the Agent or MetLife (as applicable); and (b) if less than One Million Dollars, then upon no less than three (3) Business Days' from the date that written notice is received by the applicable lender, and no objection is made by the applicable lender. Subject to the interests of the Lenders and/or MetLife, as applicable, the Receiver, in its reasonable business judgment, may seek an order of the Court with respect to Receivership Assets to be distributed.

37.     Subject to Paragraph 36, immediately above, and the Sale Limitation, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale (or similar transaction) of the Receivership Estate as a going concern, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate (a "**Going Concern Sale**"). Notwithstanding Paragraph 36, the Receiver shall not be required to obtain any consent in the event the allocation of proceeds of such sale are sufficient to satisfy the Loan and/or MetLife Loans, in full, as applicable. For the avoidance of doubt, to the extent that the allocation of proceeds of a Going Concern Sale are insufficient to satisfy the Loan or MetLife Loans, in full, the Receiver shall obtain the consent of the Agent or MetLife, respectively and as applicable, and may seek an order of the Court authorizing how such proceeds are to be distributed, subject to the interests of the Lenders and/or MetLife, as applicable.

38.     Subject to the interests of the Lenders and/or MetLife, as applicable, the Receiver shall have, as of the date hereof, the standing and status of a judgment creditor and bona fide purchaser for value of all of the Assets of the Receivership Estate the same as an assignee in a general assignment of the benefit of creditors under I.C. 28-9-309(12), and shall be automatically perfected by the entry of this Order, provided that the Receiver's rights granted herein shall be subject to the rights and priorities of the Lenders and MetLife in the Receivership Estate.

ORDER APPOINTING RECEIVER - 23

39.     Any sale, disposition, further pledge or other transfer of the Receivership Estate shall require that unavoidable, pre-appointment liens of secured creditors shall attach to the proceeds from any such sale, disposition, pledge, or transfer to the same extent as such liens attached to the Receivership Estate, but only to the extent, validity, and priority that such liens existed prior to the date hereof and subject to all applicable laws and contracts, or as otherwise provided in protective advances granted under the terms of this Order.  For the avoidance of doubt, nothing in this Paragraph is intended nor shall it, convey any rights, title, and interests that did not otherwise validly exist prior to the date hereof or as to protective advances under the terms of this Order.

40.     Subject to Paragraph 39 and the other applicable terms of this Order, any sale by the Receiver of any Receivership Assets shall be free and clear of all liens and interests attaching at any time after the appointment of the Receiver under this Order in accordance with the Receiver's interest attaching the same as an assignee in a general assignment of the benefit of creditors under I.C. 28-9-309(12).

41.     Subject to the Operating Budget and Bankruptcy Agreement, the Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate/Entities, including making legally required payments to creditors, employees, and agents of the Receivership Entities and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

42.     The Receiver may, but is not required to, take all necessary steps to enable the Receivership Assets to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

43.     Notwithstanding anything to the contrary in this Order, for a period of sixty (60) days from the entry of this Order, the Receiver shall not sell any assets except as follows (the "**Sale Limitation**"): (a) the Receiver is authorized to sell up to $5 million of steer with sixty (60) percent

ORDER APPOINTING RECEIVER - 24

of the proceeds to be remitted to the Agent for application against the principal of the Loan and forty (40) percent to be used by the Receiver in the operations of the Borrowers' businesses; and (b) the Receiver is authorized to sell culled cows with the proceeds to be retained by the Receiver and used in accordance with the ordinary course practices of the Borrowers' businesses that existed prior to the Agent exercising remedies with respect thereto.  After the expiration of the sixty (60) day period, the Receiver shall no longer be subject to the Sale Limitation.

44.    The Sale Limitation shall not restrict, and the Receiver is fully authorized to, conduct appraisals and valuations of the Borrowers' businesses, evaluate selling or otherwise disposing of the Borrowers' business segments (subject to the Sale Limitation), speak with investment bankers or other brokers (subject to a customary non-disclosure agreement) to assist in a sale of the Borrowers (as a going concern or otherwise), and speak with potential lenders regarding a refinancing of the Loans.  In the event Borrowers receive inquiries from potential purchasers, Borrowers shall provide Receiver with notice of the identity of such parties.

## X.    INVESTIGATE AND PROSECUTE CLAIMS

45.    The Receiver is authorized, empowered and directed to investigate defend or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind, including the instant proceeding, as may in his discretion be advisable or proper to recover and/or conserve the Receivership Assets and Receivership Estate; provided that the Receiver may not prosecute or commence any actions until sixty (60) days after the entry of this Order unless authorized by this Court.

46.    Subject to the Operating Budget, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; effective sixty (60) days after entry of this Order, the Receiver may

ORDER APPOINTING RECEIVER - 25

seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent or preferential transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

47.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Receivership Entities, for matters arising after the entry of this Order.

48.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

### XI.    BANKRUPTCY FILING

49.     The Receiver has the power and authority to file voluntary petitions for relief under Title 11 of the United States Code (the "**Bankruptcy Code**") for any and all of the Receivership Entities. Subject to the Bankruptcy Limitation, if the Receivership Entities are placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate the Receivership Estate as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to the terms of this Order but subject to the Bankruptcy Limitation, the Receiver is vested with management authority for the Receivership Defendant and may therefore file and manage a Chapter 11 petition.

50.     Subject to the Bankruptcy Limitation, (a) the Receiver has the sole authority to file for relief under the Bankruptcy Code; and (b) any other person or entity, other than the Receiver, is barred from placing the Receivership Entities in bankruptcy proceedings.

51.     Notwithstanding anything to the contrary herein, for a period of sixty (60) days from the entry of this Order, Mr. William Millenkamp shall have the exclusive right to commence cases under the Bankruptcy Code for all or any of the Borrowers (the "**Bankruptcy Agreement**").

ORDER APPOINTING RECEIVER - 26

Upon the filing of any such bankruptcy cases, the receivership established by this Order shall terminate and cease to be in effect.  As a condition to Mr. Millenkamp's exercise of such right, the Borrowers shall cause the Receiver to receive any and all accrued and unpaid fees and expenses. Further, in connection with any such filing authorized by Mr. William Millenkamp, the Receiver shall be authorized to fund the payment of retainers for the Borrower's professionals, including attorneys and financial consultants, in an amount not to exceed $500,000 (the "**Retainer Advance**").  Additionally, in connection with any bankruptcy cases commenced pursuant to the Bankruptcy Limitation, the Borrowers will seek to retain the Receiver in the capacity as chief financial officer (or similar title) on mutually acceptable terms. By this Order, the Agent consents and agrees to the use of the Retainer Advance, as its cash collateral, for the payment of such retainers.

52.     Following the expiration of the Bankruptcy Agreement, the Receiver shall have the exclusive right to commence cases under the Bankruptcy Code in accordance with the rights, powers, and duties granted in this Order.

53.     In connection with any cases commenced by the Borrowers under chapter 11 of the Bankruptcy Code (whether authorized by Mr. William Millenkamp or the Receiver), Mr. William Millenkamp will, subject to his agreement, continue to act as operating consultant for a salary of not less than $250,000 per year (with the option to convert such remuneration into equity of the reorganized Borrowers issued pursuant to a plan of reorganization).

**XII.      LIABILITY OF RECEIVER**

54.     Until further Order of this Court, and with all parties reserving all rights to seek further orders regard a receiver bond, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

55.     The Receiver's agents, attorneys, employees, and other professional advisors, acting within scope of such agency ("**Retained Personnel**") are entitled to rely on all outstanding

ORDER APPOINTING RECEIVER - 27

rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

56.     No obligation incurred by the Receiver in the good-faith performance of the Receiver's duties, whether pursuant to contract, by reason of any tort, or otherwise, shall be the Receiver's personal obligation. The recourse of any person or entity to whom the Receiver becomes obligated in the good faith performance of the Receiver's duties shall be solely against the Receivership Estate.

57.     This Court shall retain jurisdiction to the extent allowed by law, over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

58.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

**XIII.        RECOMMENDATIONS AND REPORTS**

59.     Effective sixty (60) days after entry of this Order, the Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Assets (the "**Liquidation Plan**").

60.     Within one hundred eighty (180) days of the entry date of this Order, the Receiver shall file and serve a full report and accounting of the Receivership Estate under seal (the "**Accounting**") reflecting (to the best of the Receiver's knowledge as of the date of the report) the

ORDER APPOINTING RECEIVER - 28

existence, value, and location of all Receivership Assets, and of the existence of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

61.   The Accounting shall contain the following:

a.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

b.   A schedule of all the Receiver's receipts and disbursements;

c.   A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

d.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments); and

e.   A list of all known creditors with their addresses and the amounts of their claims.

62.   Within sixty (60) days after the Receiver files the Accounting under seal, the Receiver shall make a written recommendation to the Court, upon consultation with the Rabo's counsel, for authorization to continue or discontinue the receivership and/or to enter into liquidation proceedings.

63.   The Receiver shall continue in possession of the Receivership Estate pending further order of the Court. The Receiver may apply for discharge after all property of the Receivership Estate has been liquidated, the debts of the Receivership Entities have been satisfied,

ORDER APPOINTING RECEIVER - 29

or for other cause shown. In such event, the Receiver shall file with the Court and serve on all Parties hereto a motion for discharge. Upon approval, the Receiver shall be discharged from all further duties, liabilities, and responsibilities relating to the Receivership Estate except for the preparation and filing of a final report and account.

64. Not later than thirty (30) days after the filing of the motion for discharge, the Receiver shall file, serve, and set, for hearing its final report and account under seal. Notice must be given to all Parties hereto and all other persons of whom Receiver is aware may have potential claims against the Receivership Estate.

65. The Receiver shall apply to the Court for a formal discharge and approval of its final accounting no later than sixty (60) days after it relinquishes control of the Receivership Estate or otherwise ordered by the Court.

XIV.    DISPUTES

66. In the event of any dispute with respect to the interpretation of this Order, this Court shall retain exclusive jurisdiction over such dispute. The Court's authority to adjudicate any such dispute shall survive termination of the receivership.

XV.    FEES, EXPENSES, AND ACCOUNTING

67. Subject to the provisions of this section immediately below and the Operating Budget, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

68. The Receiver is authorized to solicit Retained Personnel to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall promptly give notice to the Court of any Retained Personnel and file a copy of the agreement governing such engagement.

69. Subject to the Operating Budget, the Receiver and Retained Personnel are entitled

ORDER APPOINTING RECEIVER - 30

to reasonable compensation and expense reimbursement from the Receivership Estate. Compensation and expense reimbursement to the Receiver and Retained Personnel shall be paid from the Receivership Estate and shall take priority over all other claims against the Receivership Estate.

70.     The Receiver is authorized to pay reasonable retainers to Retained Personnel, and the Retained Personnel and the Receiver are authorized, subject to the right of the Court to order adjustments as set forth below, to apply the retainers to their fees and expenses, including fees and expenses incurred prior to the appointment of the Receiver for time spent related to the receivership, under the terms of their respective agreements. Within twenty (20) days after the end of each calendar month, the Receiver shall provide to the Court a report of compensation and expense reimbursement from the Receivership Estate (the "**Monthly Fee Reports**"). Fees and expenses disclosed in the Monthly Fee Reports will be subject to cost benefit and final reviews at the close of the receivership. If no person objects to any Monthly Fee Report within ten (10) business days following the date of service of each Monthly Fee Report, the proposed disbursement shall be deemed approved as being fully and finally earned without further order or leave of the Court. Notwithstanding the foregoing, at the close of the receivership, the Receiver will file a final fee report, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

71.     At the close of the Receivership, the Receiver shall submit a Final Accounting as well as the Receiver's final application for compensation and expense reimbursement.

72.     Any Party may seek reconsideration or further modification of this Order by filing a written motion to the Court.

DATED _February 16, 2024_

By: _____
Hon. Patrick J. Miller
District Judge

ORDER APPOINTING RECEIVER - 31

59797.0002.16820775.3

CLERK'S CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE I HEREBY CERTIFY that I caused to be served a true copy of the foregoing Order Appointing Receiver by the method indicated below, and addressed to each of the following:

Matthew T. Christensen
J. Justin May
Katherine R. Sliman
JOHNSON MAY
199 N Capitol Blvd., Suite 200
Boise, Idaho 83702
*Counsel for Defendants*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail
mtc.eserve@johnsonmaylaw.com
jjm.eserve@johnsonmaylaw.com
krs.eserve@johnsonmaylaw.com
☐ Facsimile
☐ iCourt

Kimball D. Gourley
JONES WILLIAMS FUHRMAN GOURLEY
225 N 9th Street, Suite 820
Boise, Idaho 83702
*Counsel for MetLife, Interested Party*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail:  kgourley@idalaw.com
☐ Facsimile
☐ iCourt

Robert A. Faucher
Zachery J. McCraney
HOLLAND & HART, LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
*Counsel for Glanbia Foods, Inc., Interested Party*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail:  RFaucher@hollandhart.com
ZJMcCraney@hollandhart.com
☐ Facsimile
☐ iCourt

Brian Rothschild
Richard H. Greener
Slade D. Sokol
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID 83702
*Counsel for Matthew McKinlay and CFO Solutions, dba Ampleo, Proposed Receiver*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail:  brothschild@parsonsbehle.com
rgreener@parsonsbehle.com
ssokol@parsonsbehle.com
☐ Facsimile
☐ iCourt

Sheila R. Schwager
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 W. Main Street, Ste 200
Boise, ID 83702
*Counsel for Plaintiff*

☐ U.S. Mail, Postage Prepaid
☐ Hand Delivered
☐ Overnight Mail
☑ E-mail: sschwager@hawleytroxell.com
☐ Facsimile
☐ iCourt

ORDER APPOINTING RECEIVER - 32

59797.0002.16820775.3

Dated:  2/16/2024

TRENT TRIPPLE
Clerk of the Court

By
Deputy Clerk

ORDER APPOINTING RECEIVER - 33

59797.0002.16820775.3