Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
       jjm@johnsonmaylaw.com


Krystal Mikkilineni, *PHV pending*
Robert E. Richards, *PHV pending*
Tirzah Roussell, *PHV pending*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
       Robert.richards@dentons.com
       Tirzah.roussell@dentons.com

Attorneys for the Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>MILLENKAMP CATTLE, INC.<br><br>                  Debtor. | Case No. 24-40158-NGH<br><br>Chapter 11<br><br>Joint Administration Requested |

**SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING[1]**

---

[1] The Debtors in the Chapter 11 Cases are: Millenkamp Cattle, Inc.; Idaho Jersey Girls LLC; East Valley Cattle, LLC; Millenkamp Properties, L.L.C.; Millenkamp Properties II LLC; Millenkamp Family LLC; Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC; Black Pine Cattle LLC; and Millenkamp Enterprises LLC.

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 1

Millenkamp Cattle, Inc. (together with its affiliated entities, the "Debtors" or "Millenkamp Cattle"), by and through its counsel of record, Johnson May, provides the following supplement to the *Emergency Motion of Debtors for Interim and Final Orders (A) Authoring the Debtors to obtain Post-Petition Financing; (B) Granting adequate protection to pre-petition secured creditors; and (C) setting a final hearing* (Docket No. 24 - the "DIP Motion");

Attached here as Exhibit 1 is the proposed Interim Order authorizing post-petition financing. Pursuant to Local Bankruptcy Rule 4001-1(b)(7), paragraphs 2(c) and 2(d) of the proposed order contain terms listed in part (b) of the Guidelines regarding Motions to Use Cash Collateral or to obtain Credit, or Stipulation regarding the Same.

DATED this 4th day of April, 2024.

/s/ Matt Christensen
MATTHEW T. CHRISTENSEN
Attorney for the Debtors

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of April 2024, I caused to be served a true and correct copy of the foregoing SUPPLEMENT electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| Krystal R. Mikkilineni | krystal.mikkilineni@dentons.com |
| Tirzah R. Rousell | Tirzah.rousell@dentons.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Heidi Buck Morrison | heidi@racineolson.com |
| David A. Coleman | david@colemanjacobsonlaw.com |
| Gery W. Edson | gedson@gedson.com |
| J.B. Evans | evans.jb@dorsey.com |
| Zachary Fairlie | zfairlie@spencerfane.com |
| Kimbell D. Gourley | kgourley@idalaw.com |
| Daniel C. Green | dan@racineolson.com |
| John O'Brien | jobrien@spencerfane.com |
| Scott C. Powers | spowers@spencerfane.com |
| Janine P. Reynard | janine@averylaw.net |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |

Any others as listed on the Court's ECF Notice.

_____
KRYSTAL MIKKILINENI

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re<br><br>MILLENKAMP CATTLE, INC., *et. al.*,<br><br>Debtors.[2] | Case No. 24-40158-NGH<br><br>Chapter 11 |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS; AND (C) SETTING A FINAL HEARING**

Upon the motion, dated April 2, 2024 (the "Motion"), of Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of an interim order (this "Interim Order"); the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion

---

[2] The Debtors in the Chapter 11 Cases along with the last four digits of their respective tax identification number or registration number in the applicable jurisdiction are: Millenkamp Cattle, Inc. (26-0603892); Idaho Jersey Girls LLC (46-3084467); East Valley Cattle, LLC (20-3238613); Millenkamp Properties, L.L.C. (26-0604003); Millenkamp Properties II LLC (84-3797719); Millenkamp Family LLC (46-1868279); Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC (81-4713431); Black Pine Cattle LLC; and Millenkamp Enterprises LLC.  The location of the Debtors' service address for purposes of the Chapter 11 Cases is 471 N 300 W., Jerome, ID 83338.

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 5

and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of William John Millenkamp in Support of the First-Day Motions and Relief* (the "Millenkamp Declaration"); and the Court having held a hearing on April 4, 2024 to consider entry of this Interim Order (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the Millenkamp Declaration, and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, their livestock, and all other parties in interest; and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and providing for the well-being of their livestock; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

    A.    **Petition Date.**  On April 2, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for District of Idaho (the "Court") commencing the Chapter 11 Cases.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official statutory

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

  B.  **Jurisdiction and Venue.** The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

  C.  **Notice**.  Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, and the Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Interim Hearing, or this Interim Order shall be required.

  D.  **No Control.** The DIP Lender was not and is not in control of persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility.

  E.  **Immediate Need for Postpetition Financing and Use of Cash Collateral.** Good cause has been shown for entry of this Interim Order.  The immediate ability of the Debtors to preserve and maintain the value of their assets, maximize value for creditors and provide for the well-being of Livestock requires the availability of working capital from the DIP Facility and use of Cash Collateral, to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates.  In the absence of the continued availability of such funds and liquidity in accordance with the terms hereof

(including access to the DIP Facility and use of Cash Collateral), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their Livestock would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with the terms of this Interim Order.

F. **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain credit on more favorable terms and conditions than those provided in this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claim and without granting the adequate protection as and to the extent set forth herein.

G. **Adequate Protection for Pre-Petition Secured Parties.**

(i) The Pre-Petition Secured Lenders are provided adequate protection through an "equity cushion" on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the Carve Out and to the DIP Liens the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "<u>Diminution in Value</u>") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 8

(ii) Accordingly, under the circumstances of the Chapter 11 Cases, the Equity Cushions, together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

(iii) The DIP Loan is critical to the Debtors' ability to preserve the Debtors' assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors, their creditors and their assets, businesses, goodwill, reputation, and employees. Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and the care of the livestock.

H. **Extension of Financing.** The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Term Sheet and the other DIP Loan Documents, and subject to (i) the entry of this Interim Order, the entry of the Final Order, and approval of each provision of the DIP Loan Documents, and (ii) findings by this Court that such financing is essential to the Debtors' estates.

I. **Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility (including the fees, expenses, and other amounts paid and to be paid thereunder), are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the other DIP Loan Documents by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 9

thereby.  The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals.  The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses.  The DIP Lender is entitled to the protection and benefits of Bankruptcy Code section 364(e).

J.  **Relief Essential; Best Interests.**  The relief requested in the Motion (and granted or otherwise provided for in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003.  It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility, (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender, and (c) use Cash Collateral, as contemplated herein.

**NOW, THEREFORE,** based upon the foregoing, and after due consideration and good cause appearing therefor, **IT IS ORDERED** that:

1.  **Motion Granted.**  The Motion is granted in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2.  **DIP Facility.**

(a)  *DIP Obligations*. The Debtors are expressly and immediately authorized, empowered, and directed, on an interim basis, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility in accordance with and subject to this

Interim Order and the DIP Loan,. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Loan, and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations"). The DIP Facility and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or refer to any particular provision of any DIP Loan Document or any other agreement in this Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent that the DIP Term Sheet approved by this Interim Order is approved in its entirety.

(b)    *Authorization to Borrow*.   In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility and, subject to any conditions or limitations set forth in the DIP Term Sheet, to borrow under the DIP Facility.

(c)    *DIP Collateral*.   As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, , investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action and all

substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

(d) *DIP Liens*. The DIP Liens shall be effective and perfected as of the entry of this Interim Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion. Effective immediately upon entry of the Interim Order, and subject to the Carve-Out, and as set forth more fully in this Interim Order, and the DIP Facility, the DIP Lender is hereby granted valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor, and shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or replacement liens granted on the DIP Collateral (the "Primed Liens").

(e) *DIP Superpriority Claim*. Effective immediately upon entry of this Interim Order, pursuant to Bankruptcy Code section 364(c)(1), and subject in each case to the Carve-Out, the DIP Loan shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all claims against the Debtors, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Debtors who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all

other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

3. **Authorization and Approval to Use DIP Facility Proceeds.** Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Budget, each Debtor is authorized to use the DIP Facility proceeds.

4. **Adequate Protection for Pre-Petition Secured Lenders.** The Pre-Petition Secured Lenders are provided adequate protection through an "equity cushion" on their collateral, and solely to the extent of any diminution in the value of their respective interests in the Pre-Petition Collateral resulting from, among other things, the subordination to the Carve Out and to the DIP Liens the Debtors' use, sale, or lease of such Pre-Petition Collateral, including Cash Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender).

(ii) Accordingly, under the circumstances of the Chapter 11 Cases, the equity cushion, together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Pre-Petition Secured Lenders.

5. **DIP Lien and Adequate Protection Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 13

without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens and to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code section 362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date. The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens.

6. **Carve-Out.**

(a) The DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superiority Claims are subordinate only to the Carve Out. The Carve Out shall mean a carve-out in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code *plus* interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in an aggregate amount not to exceed $250,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant

to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons").

7. **Other Rights and Obligations.**

(a) *Expenses*. The Debtors will be responsible for the DIP Lender's out of pocket reasonable fees and expenses incurred by the DIP Lender to put the DIP Loan in place, to manage the DIP Loan, and to enforce the terms of the DIP Loan (absent an event of default) up to an amount not to exceed $200,000.

(b) *Binding Effect*. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and the Pre-Petition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 cases.

(c) *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(d) *Amendment*. The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Documents without further notice to or approval of the Court (but upon two (2) Business Days' prior notice, solely to the extent reasonably practicable under the circumstances, having been given to Committee Counsel (if any) and the U.S. Trustee of any amendment or modification; *provided* that such notice shall not be deemed to create any Committee or U.S. Trustee approval rights), unless such amendment, modification, supplement or waiver (a) increases the interest rate or fees (other than consent fees in connection

SUPPLEMENT TO MOTION TO APPROVE POST-PETITION FINANCING – Page 15

with such amendment, modification, supplement or waiver) charged in connection with the DIP Facility; or (b) increases the commitments of the DIP Lender to make extensions of credit under the DIP Facility. Except as otherwise provided herein, no other waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender and approved by the Court after notice to parties in interest.

(e) *Priority of Terms*. To the extent of any conflict between or among (i) the express terms or provisions of any of the other DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Facility, the terms and provisions of this Interim Order shall govern.

(f) *Survival of Interim Order*. Except to the extent set forth in the Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. Except to the extent set forth in the Final Order (if entered), the terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Interim Order or the Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Lenders (including any

adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claim shall maintain their priorities as provided by this Interim Order and the other DIP Loan Documents, until all of the DIP Obligations have been indefeasibly paid and fully satisfied in accordance with the DIP Loan Documents, as the case may be, and discharged.

(g) *Enforceability*. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(h) *Waiver of any Applicable Stay*. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

8. **Final Hearing.** The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for May [__], 2024, at _:__ __.m. (Mountain Time) at the United States Bankruptcy Court for the District of Idaho. The Debtors shall promptly mail copies of the notice of entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee Counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than April [•], 2024, which objections shall be served so that the same are received on or before such

date by: (a) counsel for the Debtors, [●];(b) counsel to the DIP Lender, [●]; (c) counsel for Rabo (d) counsel for MetLife, [●]; (e) counsel to Conterra, [●]; (f) counsel to any Committee; and (g) the U.S. Trustee.

9.  **Retention of Jurisdiction.**   The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

// End of Text //

Order submitted by:

Matthew T. Christensen, attorney for the Debtors