Jason R. Naess, ISBN 8407
Assistant United States Trustee
Brett R. Cahoon, ISBN 8607
Andrew S. Jorgensen, ISBN 8695
United States Department of Justice
Office of the United States Trustee
720 Park Blvd, Ste. 220
Boise, Idaho 83712
(208) 334-1300
(208) 334-9756 [Facsimile]
ustp.region18.bs.ecf@usdoj.gov

Attorneys for the Acting United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In re: | Case No. 24-40158-NGH |
| MILLENKAMP CATTLE, INC., *et al.*, | Chapter 11 |
| Debtors.[1] | (Joint Administration Requested) |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS TO CRITICAL VENDORS, DKT. NO. 23**

The Acting United States Trustee ("UST") hereby objects to the Debtors' <u>Emergency</u> Motion for Entry of an Order Authorizing Debtors to Honor Prepetition Obligations to Critical Vendors, Dkt. No. 23 (the "Critical Vendors Motion" or "Motion") on primarily procedural and burden of proof-related grounds. The UST anticipates Debtors will be able to adequately address this objection at the evidentiary hearing scheduled for April 9, 2024, and through adjustments to the transparency of the Accountability Requirements identified in the Critical Vendors Motion.

---

[1] Millenkamp Cattle, Inc., is the "lead case" in a requested joint administration of ten bankruptcy cases. The Debtors in the other Chapter 11 Cases along with the, Bankruptcy Case numbers for those debtors are: Idaho Jersey Girls LLC (24-40159-NGH); East Valley Cattle, LLC (24-40160-NGH); Millenkamp Properties, L.L.C. (24-40161-NGH); Millenkamp Properties II LLC (24-40162-NGH); Millenkamp Family LLC (24-40163-NGH); Goose Ranch, LLC (24-40164-NGH); Idaho Jersey Girls Jerome Dairy LLC (24-40165-NGH); Black Pine Cattle LLC (24-40166-NGH); and Millenkamp Enterprises LLC (24-40167-NGH).

- 1

**BACKGROUND**

1. Debtors filed the Critical Vendors Motion on the Petition date, as one of four First Day Motions scheduled for hearing two days later, on April 4, 2024. Dkt. No. 23.

2. Debtors served the Critical Vendors Motion via First Class United States Mail, on April 3, 2024. Dkt. No.73.

3. At the April 4, 2024, hearing, the Court continued several of the First Day Motions, including the Critical Vendors Motion, to an in-person evidentiary hearing to be held on April 9, 2024. *See* Dkt. No. 111.

4. The Critical Vendors Motion seeks authority for Debtors to pay the prepetition claims of "certain vendors and service providers that provide feed and other essential services that are central to the Debtors' operations" (the "Critical Vendors") prior to the confirmation of a Chapter 11 plan. *See* Dkt. No. 23 at 2 (cleaned up). Debtors seek authority to pay up to $31.6 million in prepetition claims in this manner, with $5.2 million of the claims being authorized on an interim basis before a final hearing on the Motion may be held. *Id.* at 4-5.

5. Debtors seek further authority to pay additional amounts to Critical Vendors who also have § 503(b)(9) administrative claims. Debtors approximate the amount of those additional payments to be roughly $750,000 on top of the requested $31.6 million. *See id.* at 5.

6. Debtors do not identify the Critical Vendors in the Motion but state the "amounts to be paid to the Critical Vendors are already provided for in the Debtors' operating Budget (the "Budget") submitted with the Debtors' motion for authority to use cash collateral (the "Cash Collateral Motion")." *Id.* at 5. At the front of the Budget, Debtors identify "AP Payments to Critical Vendors," lumped in general categories. Dkt. No. 22 at 25-27. Over the period covered by the Budget (April 1 to August 11, 2024), Debtors propose to pay a total of $16,691,071 in

- 2

prepetition Critical Vendors' claims. *Id.* Later, the Budget identifies those entities the Debtors propose to pay as Critical Vendors during the April 1 to August 11, 2024, period. The following table summarizes those payments:

**INITIAL PAYMENTS TO CRITICAL VENDORS (Between April 1 and August 11, 2024)**

| | |
|---|---|
| **Feed** | **$13,275,000** |
| Aden Brook Trading Corp. | $600,000 |
| American Calf Products | $0 |
| Carne I Corp | $0 |
| H & M Custom | $4,000,000 |
| Land View, Inc.-Livestock-Animal Care | $3,000,000 |
| PerforMix Nutrition Systems | $0 |
| Receptor Food Group | $500,000 |
| Wada Farms | $175,000 |
| Viterra USA Grain, LLC | $0 |
| [Silage Group] | $5,000,000 |
| **Vet/Med** | **$1,500,000** |
| MWI Veterinary – Black Pine | $0 |
| MWI Veterinary – Milkers | $0 |
| MWI Veterinary – Millenkamp | $1,500,000 |
| MWI Veterinary Idaho Jersey Girls | $0 |
| **Repairs & Maintenance** | **$1,316,071** |
| The Dairy Solutions Group | $70,000 |
| Automation Werx, LLC | $100,000 |
| Green Source Automation | $150,000 |
| Progressive Dairy Service and Supplies | $0 |
| Elevation Electric | $200,000 |
| Clear Waer Products, LLC | $200,000 |
| Western States Cat | $596,071 |
| **Chemicals** | **$600,000** |
| Rocky Mountain Agronomics | $400,000 |
| Clear Lakes Products | $200,000 |
| **Other** | **$0** |
| Butte Irrigation Inc. | $0 |
| **Total AP Payments to Critical Vendors** | **$16,691,071** |

*See* Dkt. No. 22 at 40-42.

7. Debtors have not yet filed their Schedules and there is no indication in the Critical Vendors Motion or Cash Collateral Motion as to which of the identified Critical Vendors are general unsecured creditors as opposed to which are potentially secured by agricultural liens.

8. Debtors assert they "have engaged in an extensive process of reviewing and analyzing the Debtors' books and records, consulting operations management and purchasing personnel, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practices to identify business relationships—which, if lost, could materially harm the Debtors' cattle, the Debtors' businesses, reduce their enterprise value, and/or impair their restructuring process—all in an effort to identify only those most critical vendors using their business judgment (the "Protocol")." Dkt. No. 23 at 5. Debtors further assert the Protocol will identify only those payments that are "needed to avoid immediate and irreparable harm" and will be "overseen by a core, centralized team consisting of the Debtors' senior management and professional advisors." *Id.* at 11.

9. Debtors state that, "[i]n support of this Motion, the Debtors have separately filed the Declaration of William John Millenkamp in Support of Debtors' First Day Motions (the "Millenkamp Declaration")." *Id.* Debtors filed the Millenkamp Declaration as Docket Number 26 in the Millenkamp Cattle Bankruptcy Case.

10. Though the Millenkamp Declaration addresses some matters regarding the filed Cash Collateral and DIP Financing motions, it does not address the Critical Vendors Motion or provide support for the Motion other than by including general catch-all language that the "facts set forth" in the "First Day Motions" are "true and correct to the best of" the Declarant's knowledge. *See* Dkt. No. 26 at 17-19 and ¶ 74. There are no specifics or explanations as to who is included in the Debtors' Protocol team or as to how the Protocol was implemented to identify

the Critical Vendors specified in the Budget as being necessary to avoid immediate and irreparable harm. *See, generally, id.*

11. The Critical Vendors Motion also proposes to keep many aspects of the payments to Critical Vendors largely secret from most parties. The identification of Critical Vendors and any detailed explanation as to how or why specific vendors are determined to be critical, pursuant to the Protocol, is proposed to be shared only with a limited few. For example, in outlining "Proposed Conditions to Receiving Payment," the Critical Vendors Motion provides:

> The Debtors, at their discretion using their business judgment, and pursuant to the Protocol, shall pay the Critical Vendors, subject to certain accountability requirements (the "<u>Accountability Requirements</u>"). The Accountability Requirements shall include: (i) filing under seal a report on a monthly basis that details the Critical Vendor payments (the "<u>Interim Critical Vendors Report</u>"), with a final report filed under seal once the cap has been met (the "<u>Final Critical Vendors Report</u>"), with viewing privileges only for the Debtors, the Official Committee of Unsecured Creditors, and the United States Trustee, to include: (a) a list of the Critical Vendors; (b) the amount paid to each individual Critical Vendor; (c) a description of the supplies or services provided to the Debtors; and (d) an explanation for how each payment was determined by the carefully-designed Protocol overseen by a core, centralized team consisting of senior members of Debtors' management and professional advisors; (ii) an *in camera* hearing during which the Court may review the foregoing information in the presence of the Debtors, the Official Committee of Unsecured Creditors, and the United States Trustee; and (iii) if there is an objection to any payment by any party in interest, such objection may be heard by this Court at a hearing in open court.

Dkt. No. 23 at 7-8; *see also id.* at 10-11 (restricting disclosure of Critical Vendors' identities and payments from members of any Unsecured Creditors Committee without Debtors' written consent).

## ARGUMENT

Debtors seek authority to pay certain prepetition creditors' claims on an emergency basis,

with shortened notice, solely on representations in the Critical Vendors Motion that the payments are essential for the continued existence and/or viability of the Debtors' businesses. The Bankruptcy Code does not explicitly allow for such payments. Nonetheless, some courts authorize such payments by invoking the "necessity of payment doctrine," and relying on §§ 105(a), 363, and 507 as justification.

The UST is not raising an objection to Debtors' Critical Vendors Motion on substantive grounds, such as whether the doctrine of necessity should be recognized in this particular case. *See Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, (2017) (indicating that, even where the doctrine is recognized, it should be cabined by certain findings, such as that the critical vendor distributions would enable a successful reorganization and make even disfavored creditors better off). Rather, the UST will rely on pecuniarily-affected parties to make those challenges if they deem such as appropriate. Because, at this early stage in this case, parties in interest likely do not have the information necessary to make such challenges, the UST objects to the Critical Vendors Motion to the extent there is a lack of (i) proof of the necessity of the Critical Vendor payments to avoid immediate and irreparable harm and (ii) transparency under the proposed Accountability Requirements to allow for the evaluation of future payments and Critical Vendor determinations.

A. Rule 6003(b).

Federal Rule of Bankruptcy Procedure 6003 ("Rule 6003") regulates requests for the early payment of pre-petition creditors. In relevant part, the Rule provides: "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following – (b) a motion to . . . incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Rule 6003(b). In this manner, the Rule prevents

courts from rendering pivotal rulings without complete consideration and provides all parties in interest with a meaningful opportunity to be heard. The burden of demonstrating critical vendor payments are necessary to avoid immediate and irreparable harm rests with the debtor-in-possession. *In re BX Acquisitions, Inc.*, 588 B.R. 798, 809 (Bankr. N.D. Ohio 2018)

Though the Critical Vendors Motion includes various representations that any payments will only be necessary to avoid immediate and irreparable harm, to date, there is nothing in the record to support those representations other than the generic catch-all language in the Millenkamp Declaration that all facts in the First Day Motions are true and correct. Dkt. No. 26 at ¶ 74. The UST believes such language is not enough. To the extent a particular claimant's nature has already been deemed critical to the Debtors' operations, such as would be suggested by the claimant's inclusion as a Critical Vendor in the Cash Collateral Motion Budget, Debtors should provide some explanation as to how the Protocol's implementation led to a determination the specific creditor deserves or requires payment as a Critical Vendor.

B. <u>Transparency in Reporting and Accountability Requirements</u>.

To the extent the necessity of payments to Critical Vendors is yet to be determined, and the Critical Vendors Motion is simply providing a preview of the process the Debtors intend to use in making those determinations, the reporting identified in the Accountability Requirements is likely sufficient to meet Debtors' Rule 6003(b) burden—with one caveat: the reports should be available to all.

There is a strong presumption and public policy in favor of public access to court records and transparency, especially in the bankruptcy context. *See In re Celsius Network LLC*, 644 B.R. 276, 287-88 (Bankr. S.D.N.Y. 2022). The Bankruptcy Code codifies that presumption in § 107, which provides that, in general, all papers filed in a bankruptcy case are public records and open

to examination. Section 107 includes certain limited exceptions, identifying when filing a document under seal may be appropriate within the discretion of the bankruptcy court. *See* § 107(b), (c). All other documents, however, should be available for all to see and Debtors' proposal to only file its Critical Vendors reports "under seal" is inappropriate.

If Debtors were to file the reports contemplated by the Accountability Requirements, but not under seal and accompanied by a Declaration as to the reports' contents, all parties in interest would be made aware of the list of the Critical Vendors, the amount paid to each Critical Vendor, a description of the supplies or services provided to the Debtors by each Critical Vendor, and an explanation for how each payment was determined to be critical and necessary to avoid immediate and irreparable harm pursuant to the Protocol. In this way, Debtors will have likely satisfied any burden of proof as to the necessity and critical nature of the payments. At the very least, parties in interest would have sufficient information to object to a Critical Vendor payment if they deemed such to be inappropriate.

Lastly, at least during the early stages of this case, more frequent reporting on Critical Vendor payments may be necessary than is proposed in the Accountability Requirements. The UST generally does not appoint Critical Vendors to unsecured creditors committees. To avoid delays in the formation of any committees in this case, if payments to Critical Vendors are authorized, weekly Critical Vendors reports may be necessary until the UST (i) appoints a committee or (ii) determines it appears no committee will be appointed.

## Conclusion

The UST does not raise an objection to the Critical Vendors Motion on substantive grounds. However, at this time, the record does not support a finding that pre-determined Critical Vendors are necessary to avoid immediate and irreparable harm. And, adjustments must be made

- 8

to the proposed Accountability Requirements to allow additional transparency in the Critical Vendor determination process for future payments.

Date: April 5, 2024

        GREGORY M. GARVIN
        Acting United States Trustee for Region 18

        /s/ Jason R. Naess
        JASON R. NAESS
        Attorney for the Acting United States Trustee
        [Non CM/ECF e-mail jason.r.naess@usdoj.gov]

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on ___April 5, 2024___ I caused the foregoing document to be filed with the Court's CM/ECF system which causes a copy of the foregoing to be served by electronic means on the parties reflected on the Notice of Electronic Filing.

Date: __April 5, 2024_____

        _____/s/_____
        JASON R. NAESS

- 9