Matthew T. Christensen, ISB: 7213
J. Justin May, ISB: 5818
JOHNSON MAY
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com
       jjm@johnsonmaylaw.com


Krystal Mikkilineni, *PHV*
Robert E. Richards, *PHV*
Tirzah Roussell, *PHV*
DENTONS
215 10th Street, Ste 1300
Des Moines, IA 50309
Phone: (515) 288-2500
Fax: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
       robert.richards@dentons.com
       tirzah.roussell@dentons.com

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re<br><br>MILLENKAMP CATTLE, INC., *et. al.*,<br><br>            Debtors.[1] | Case No. 24-40158-NGH<br><br>Chapter 11 |

## DEBTOR'S NOTICE OF PREFERRED POST-PETITION FINANCING PROPOSAL

---

[1] The Debtors in the Chapter 11 Cases along with the last four digits of their respective tax identification number or registration number in the applicable jurisdiction are: Millenkamp Cattle, Inc. (26-0603892); Idaho Jersey Girls LLC (46-3084467); East Valley Cattle, LLC (20-3238613); Millenkamp Properties, L.L.C. (26-0604003); Millenkamp Properties II LLC (84-3797719); Millenkamp Family LLC (46-1868279); Goose Ranch, LLC; Idaho Jersey Girls Jerome Dairy LLC (81-4713431); Black Pine Cattle LLC; and Millenkamp Enterprises LLC.  The location of the Debtors' service address for purposes of the Chapter 11 Cases is 471 N 300 W., Jerome, ID 83338.

#3889827

Millenkamp Cattle, Inc. ("Millenkamp Cattle") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby provide notice of their preferred post-petition financing proposal, pursuant to this Court's Order at Docket No. 111. The Debtors' preferred post-petition financing proposal is the proposal submitted by Sandton Capital Partners LP on April 5, 2024, attached hereto as Exhibit A.

DATED this 6th day of April 2024.

                                                  DENTONS

                                                  */s/ Krystal R. Mikkilineni*
                                                  KRYSTAL R. MIKKILINENI
                                                  Attorney for the Debtors

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6TH day of April 2024, I caused to be served a true and correct copy of the foregoing NOTICE electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

>Matthew T. Christensen mtc@johnsonmaylaw.com
>Krystal R. Mikkilineni krystal.mikkilineni@dentons.com
>Tirzah R. Rousell Tirzah.rousell@dentons.com
>US Trustee ustp.region18.bs.ecf@usdoj.gov
>Heidi Buck Morrison heidi@racineolson.com
>David A. Coleman david@colemanjacobsonlaw.com
>Gery W. Edson gedson@gedson.com
>J.B. Evans evans.jb@dorsey.com
>Zachary Fairlie zfairlie@spencerfane.com
>Kimbell D. Gourley kgourley@idalaw.com
>Daniel C. Green dan@racineolson.com
>John O'Brien jobrien@spencerfane.com
>Scott C. Powers spowers@spencerfane.com
>Janine P. Reynard janine@averylaw.net
>Sheila R. Schwager sschwager@hawleytroxell.com
>Brent R. Wilson bwilson@hawleytroxell.com

Any others as listed on the Court's ECF Notice.

>/s/ *Krystal R. Mikkilineni*
>KRYSTAL R. MIKKILINENI

<u>EXHIBIT A</u>

# TERM SHEET
## Millenkamp Cattle, Inc., et al

This term sheet (this "<u>Term Sheet</u>") summarizes the principal terms of a potential financing (the "<u>DIP Loan</u>") between the Borrowers and Sandton Capital Partners LP and its Assigns ("Sandton"). Term Sheet is not a commitment to lend and is non-binding upon Sandton. It is subject to conditions including, but not limited to, duly executed and binding documentation to be executed and delivered by the parties (the "<u>Definitive Documents</u>") and approved by the Bankruptcy Court. By receipt of these terms and conditions, the recipient acknowledges that these materials are confidential and proprietary to Sandton and, in consideration for Lender providing these materials to the recipient, the recipient undertakes not to disclose or provide these materials to third parties (excluding properly retained advisors) without the consent of Sandton.

| **Lender:** | Sandton Capital Partners LP and/or one or more of its affiliated funds and accounts (the "<u>Lender</u>"). |
|---|---|
| **Borrowers:** | Millenkamp Cattle, Inc., East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, Millenkamp Enterprises LLC, MIllenkamp Properties II LLC, Millenkamp Properties LLC, Goose Ranch LLC, Black Pine Cattle LLC, Millenkamp Family LLC, and Idaho Jersey Girls, LLC (collectively, the "Borrower"). |
| **DIP Loan Amount:** | Total Principal Amount not in excess of $45 million (<u>see</u> proviso in Funded Amount below).<br><br>Subject to the entry of a final order (the "<u>Final DIP Order</u>") approving the DIP Loan by a United States Bankruptcy Court having jurisdiction over the Borrowers' bankruptcy cases (the "<u>Bankruptcy Court</u>"). |
| **Use of Proceeds:** | The DIP Loan will be available to the Borrowers to fund each Borrowers' expenses in accordance with the budget attached as <u>Annex A</u> (the "<u>Budget</u>"). The Budget will be agreed to by the Borrowers and the Lender and will include, without limitation, budgeted professional fees. |

| Funded Amount: | The Funded Amount will be immediately available on the Funding Date (subject to Funding Date provisions).<br><br>• **Initial Draw: $25 million**.  This amount will be immediately available for draw in accordance with the Definitive Documents upon the approval and entering of the Initial DIP Order by the Bankruptcy Court.<br><br>• **Maximum Additional Draws upon Final DIP Order $20 million**. The maximum Additional Draws will be $20 million in total (assuming Additional Draw, see below). |
|---|---|
| Funding Dates: | • **Initial Draw, $25 million**, available on the entry of an interim order (the "Interim DIP Order") approving the DIP Loan on an interim basis.<br><br>• Lender believes, based on the most recent DIP budget, that the total required DIP loan could reach $45 million.<br><br>• **Additional Draws of an Additional $20 million**. Available for the first 9 months (subject to extension) of the DIP Loan subject to mutually agreed Revenue and Operating Milestones. Minimum Additional Draws of $5 million and subject to a 7 day advance notice. |
| Maturity: | Lender will be entitled to immediate repayment of all outstanding obligations under the DIP Loan on the earliest of (the "Repayment Date"):<br><br>(a) the effective date of the plan of reorganization or closing on a sale of all or a portion of the Borrowers' assets; and<br><br>(b) 9 months from the date of origination, subject to extensions as set forth below (for a total of up to 12 months from the date of origination).<br><br>(c ) Lender will consider converting some or all of the DIP to an exit financing facility in conjunction with an emergence from Chapter 11 (subject to terms agreeable to Lender and Lender's internal approvals). |
| Amortization: | None. |

| **Prepayment:** | The DIP Loan will be prepayable in full or in part by the Borrowers on one or more occasions. There will be a mandatory repayment of the DIP Loan upon the sale of any assets outside of the ordinary course of business or the Budget. |
|---|---|
| **Loan Interest Rates and Fees:** | The DIP Loan interest rates and fees will be as follows:<br>(i) <u>Issuance Fee</u>: The Borrowers agree to an issuance fee of 1.5% on the Total Principal Amount, which fee will be earned and payable on the funding of the Initial Draw (Issuance Fee will be capitalized on the balance of the DIP Loan).<br>(ii) <u>Cash Interest</u>: None.<br>(iii) <u>PIK Interest</u>: The Borrowers will pay the Lender PIK interest at 12.5% <u>per annum</u> on the outstanding Principal Amount, which shall be added to the Principal Amount on a monthly basis. PIK'ed interest will not be counted against draw limits for any of the draws contemplated herein.<br>(iv) <u>Exit Fee</u>: The Borrowers will pay the Lender an exit fee of 1.5% on the Total Principal Amount. Such exit fees will be payable on the earlier to occur of the date: (a) the DIP Loan is required repaid in full; and (b) the DIP Loan is paid in full or in part prior (on a <u>pro rata</u> basis) to the Repayment Date.<br>(v) <u>Default Interest Rate</u>: During the occurrence and continuance of an Event of Default, the PIK Interest rate will increase by 200 b.p.<br>(vi) <u>Renewal Fee</u>: If the DIP Loan is not repaid on or before the Repayment Date, time being of the essence, the Borrowers will pay to the Lender, in addition to all other amounts as set forth in this Term Sheet, a renewal fee of 1.5% of the Total Principal Amount, which shall extend the Repayment Date by an additional 3 months (the Renewal Fee will be capitalized on the balance of the DIP Loan at the time of extension). Borrower shall be entitled to one (1) 3-month extension period at the Repayment Date (based on mutually agreed Revenue and Operating Milestones).<br>(vii) <u>Unused Fee</u>: The Borrowers will pay the Lender an Unused Fee at 1.0% <u>per annum</u> on the undrawn outstanding Principal Amount, which shall be added to the Principal Amount on a monthly basis. Unused Fee will not be counted against draw limits for any of the draws contemplated herein. |

US.363262663.02

| Revenue and Operating Milestones: | Revenue Milestone to be such that Borrower is within 20% of their rolling Budget revenue projections. Operating Milestones will be typical for a business of this nature and ensure that Borrower maintains inventory and property plant and equipment in good standing. |
|---|---|
| Collateral Security and Priority: | The collateral for the DIP Loan (the "Collateral") will include pursuant, to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, a fully perfected security interest in all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Borrowers including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds. |
| Covenants: | Affirmative, negative, and other financial and operational covenants customary for transactions of this type, including:<br><br>• Minimum cash balance of at least $1,500,000. (which may be funded from borrowed funds).<br>• Maximum capital expenditures.<br>• No dividends or any other upstream payments.<br>• No change of control, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code.<br>• Maintenance of appropriate insurances and having the Lender as a beneficiary of such insurance policies.<br>• Limitations on additional debt, guarantees, and hedging arrangements, including the subordination of all intercompany indebtedness.<br>• Limitations on liens and further negative pledges.<br>• Limitations on sales, transfers, and other dispositions of assets, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code.<br>• Limitations on loans and investments. |

US.363262663.02

|  | <ul><li>Limitations on creating new subsidiaries or becoming a general partner in any partnership.</li><li>Limitations on transactions with affiliates except as permitted.</li></ul> |
|---|---|
| **Exit Financing:** | Lender to consider exit financing. |
| **Representations and Warranties:** | Usual and customary representations and warranties, including organization in good standing, validity of agreements, tax status, compliance with law, and operational and financial disclosures. |
| **Events of Default:** | Events of Default will include, in addition to other such events customarily found in transactions similar to the DIP Loan:<ul><li>Payment defaults.</li><li>Covenant defaults.</li><li>Representation or warranty breaches.</li></ul>Among other remedies, upon the occurrence of an Event of Default, the Lender may accelerate all of the DIP Loan obligations. |
| **Expenses:** | The Borrowers will be responsible for the Lender's out of pocket fees and expenses incurred by the Lender to put the DIP Loan in place, to manage the DIP Loan, and to enforce the terms of the DIP Loan (absent an event of default) up to an amount not to exceed $200,000. |
| **Contingencies:** | Lender has completed its due diligence. |
| **Governing Law, Waiver of Jury Trial, Jurisdiction:** | In connection with the transaction outlined in this Term Sheet, all parties agree: (i) that the law of the State of New York governs without regard to any conflict of law principals; (ii) to the waiver of a trial by jury; and (iii) to the jurisdiction of the state and federal courts located in New York County, New York. The Definitive Documents will be governed by New York law. |
| **Exclusivity:** | Borrower and Lender will enter into an exclusivity agreement upon general acceptance of terms pursuant to this Term Sheet. |
| **Confidentiality:** | Borrower shall not disclose to any person or entity the terms or conditions of this term sheet or any information about the transaction, including, without limitation, the existence, status, nature, terms or conditions of the discussions or actions by the parties relating to the potential transaction except Borrower may disclose such matters (i) to those of its employees and other agents who need to know such matters for the sole purpose of permitting Borrower to evaluate or consummate the potential transaction, (ii) as explicitly approved in advance in writing by Lender or (iii) to the extent, in the reasonable judgment of Borrower, required by any applicable law or order, in which case Seller shall use commercially reasonable efforts |

| | |
|---|---|
| | to allow Borrower reasonable time to comment on such disclosure in advance thereof. |
| **Definitive Documents:** | The DIP Loan will be documented by, among other things, a promissory note, security, and credit agreement, all of which will be subject to Bankruptcy Court approval. |
| **Brokers:** | Each of the parties represent to each other that no broker or other intermediary is entitled to any payments or compensation with respect to the transactions as set forth in this Term Sheet. |

[Signature page follows]

# TERM SHEET
**Millenkamp Cattle, Inc., et al**

US.363262663.02

This Term Sheet sets forth the present status of negotiations between the Parties to aid in reaching a final binding definitive purchase and sale agreement. The Parties understand and agree that such agreement(s) will contain additional material terms and conditions, which are not addressed in this Term Sheet.

Sincerely,
**Sandton Capital Partners LP**

*Robert Rice*

Robert C. Rice
Principal


**Borrower:**   **Millenkamp Cattle, Inc., et al**

Agreed and Accepted this 5th day of April, 2024

By: _____

Its: _____

US.363262663.02