**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Millenkamp Cattle, Inc. | ) | Case No.  24-40158 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

**SUPPLEMENTAL OBJECTION TO THE EMERGENCY MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED CREDITORS; AND (C) SETTING A FINAL HEARING**

Conterra Holdings, LLC d/b/a Conterra Ag Capital as loan servicer and power of attorney ("Conterra") for Rooster Capital IV LLC ("Rooster Capital") and Ag Funding SC II LLC ("Ag Funding") by and through its attorneys, Spencer Fane LLP, for its Supplemental Objection ("Supplemental Objection") to the Emergency Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to Obtain Post-Petition Financing; (B) Granting Adequate Protection to Pre-Petition Secured Creditors; and (C) Setting a Final Hearing ("DIP Motion"), and  states as follows:

**RELEVANT BACKGROUND**

1.      The Debtors (as defined in the DIP Motion) filed the DIP Motion on April 2, 2024.

2.      Conterra, solely in its capacity as loan servicer and power of attorney for Rooster Capital and Ag Funding, filed an objection to the DIP Motion on April 4, 2024.

3.      On April 4, 2024, the Court continued the DIP Motion to a hearing set for April 9, 2024.

4.      On April 6, 2024, pursuant to the Court's order entered at docket number 111, the Debtors supplemented their DIP Motion with a revised term sheet ("Revised Sandton DIP Facility") from Sandton Capital Partners, LP ("Sandton").

5.      As detailed herein, Conterra, solely in its capacity as loan servicer and power of attorney for Rooster Capital and Ag Funding, objects to the Revised Sandton DIP Facility: (i) to the extent it is not the most economical and advantageous DIP financing available to the Debtors; (ii) to the extent it seeks priming liens on an interim basis; and (iii) with respect to Rooster Capital specifically, the Revised Sandton DIP Facility does not adequately protect Rooster Capital's first-priority lien on the $2,549,750 Note Real Property Collateral (defined herein).

### Rooster Capital Loan[1]

6.      Millenkamp Cattle, Inc., Millenkamp Family LLC, Millenkamp Properties II LLC, Millenkamp Properties, L.L.C., East Valley Cattle, LLC, Idaho Jersey Girls Jerome Dairy LLC, and William J. Millenkamp (collectively, the "Borrowers") executed and delivered to Conterra a promissory note dated October 20, 2022 in the original principal amount of $2,549,750 which Conterra endorsed to Rooster Capital, a true and correct copy of which with the Allonge is Exhibit 6 (the "$2,549,750 Note") to the Declaration.

7.      As of April 2, 2024, the unpaid balance of the $2,549,750 Note is $2,576,728.08 calculated as follows:

| | |
|---|---|
| Unpaid Principal | $2,508,860.41 |
| Accrued Interest through 4/2/24 | $     67,867.67 |
| Total unpaid balance as of 4/2/24 | $2,576,728.08 |

---

[1] The Declaration of Paul Erickson ("Declaration"), filed contemporaneously herewith at Docket Number 132, details the Ag Funding Loan and the Rooster Capital Loan. The Declaration is hereby incorporated herein by reference.

The $2,549,750 Note continues to accrue interest on and after April 3, 2024, at the default rate of 18% per annum and the current default per diem is $1,254.43. Declaration ¶ 14.

8.      To secure the $2,549,750 Note, Borrowers executed and delivered a Mortgage, Security Agreement, Assignment of Rents and Fixture Filing dated October 20, 2022 and recorded on October 20, 2022 at Instrument No. 2224754, Jerome County records which was assigned by virtue of an Assignment of Mortgage dated October 20, 2022 and recorded on October 20, 2022 at Instrument No. 2224755, Jerome County records, a true and correct copy is attached as Exhibit 7 (the "Mortgage") to the Declaration. Declaration ¶ 15.

9.      The $2,549,740 Mortgage is a first lien on an 80-acre parcel owned by Millenkamp Properties, LLC commonly known as the "German Dairy" (the "$2,549,750 Note Real Property Collateral"). Declaration ¶ 16.

10.     The $2,549,750 Note Real Property Collateral is an 80-acre parcel. 53 acres are irrigated farmland. 25 acres are a dairy facility. 2 acres are waste. The 25-acre dairy facility has a milking parlor for sicks and animals in abeyance pending medicine withdrawal. Declaration ¶ 17.

11.     To perfect its lien on the $2,549,750 Note Real Property Collateral constituting the personal property, Rooster Capital filed the following financing statements:

a.      Financing Statement filed with the Idaho Secretary of State on October 28, 2022 as Doc. No. 20221833441, a true and correct copy of which is attached as Exhibit 8 to the Declaration; and

b.      Financing Statement filed with the Jerome County Clerk and Recorder on October 20, 2022 at Instrument No. 2224756, a true and correct copy of which is attached as Exhibit 9 to the Declaration. Declaration ¶ 19.

DE 8649724.1

12.     To further secure the $2,549,750 Note, Borrowers executed and delivered a Milk Check Assignment Agreement for Glanbia Foods, Inc. dated October 26, 2022, a true and correct copy of which is attached as Exhibit 10 to the Declaration. Declaration ¶ 20.

13.     Conterra has an appraisal on the $2,549,750 Note Real Property Collateral dated April 15, 2022, stating a market value of $4,250,000.00. Declaration ¶ 18.

## REQUESTED RELIEF

14.     Conterra, solely in its capacity as the servicer and power of attorney for Rooster Capital and Ag Funding, respectfully requests that the Court enter an order (i) approving the DIP Motion only to the extent it proposes DIP financing with the most economical and advantageous DIP financing terms and conditions available to the Debtors; (ii) denying consideration of proposed priming liens on an interim basis; (iii) with respect to Rooster Capital, approving the DIP Motion only to the extent that it adequately protects Rooster Capital's first lien on the $2,549,750 Note Real Property Collateral, including without limitation, capping any DIP lien on the $2,549,750 Note Real Property Collateral proportionate to the value of the $2,549,750 Note Real Property Collateral relative to the total value of all DIP Collateral; and (iv) granting such other and further relief as the Court deems just and appropriate.

## BASIS FOR RELIEF

15.     Bankruptcy Code section 364(d)(1) governs the incurrence of senior secured debt or "priming" loans. Pursuant to section 364(d)(1), the Court may, after notice and a hearing, authorize the Debtors to incur debt secured by a senior or equal lien *only* if the Debtors "establish: (1) that they are unable to obtain credit otherwise; (2) that the transaction is within the Debtors' business judgment; and (3) that the interests of primed lienholders are adequately protected." *In re Yellowstone Mountain Club, LLC,* No. 08-61570-11, 2008 WL 5875547, at *7 (Bankr. D. Mont.

Dec. 17, 2008); 11 U.S.C. § 364(d)(1). Under section 364(d), the Debtors have the burden of proving that, among other things, the terms of the proposed transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." *See, e.g., In re L.A. Dodgers LLC,* 457 B.R. 308, 312-13 (Bankr. D. Del. 2011). The Debtors also have the burden of demonstrating that "the relief requested is an appropriate exercise of the debtor's business judgment." *U.S. Bank Trust N.A. v. Am. Airlines, Inc. (In re AMR Corp.),* 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013), *aff'd,* 730 F.3d 88 (2d Cir. 2013). The business judgment standard requires that the proposed Revised Sandton DIP Facility be (a) the product of a fair, arm's-length process and (b) on the best available terms. *See, e.g., In re Mid-State Raceway, Inc.,* 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005).

**I.     Economical and Advantageous DIP Financing is in the Best Interest of All**

16.     As detailed in Conterra's objection filed on April 4, 2024, Ag Funding holds junior liens on certain assets of the Debtors. Rooster Capital has a first lien on the $2,549,750 Note Real Property Collateral. As such, Conterra, solely in its capacity as the loan servicer and power of attorney for these two loans, seeks the most-advantageous DIP terms and conditions available, including costs and fees.

17.     Lower costs and improved terms will provide a savings to the estates and creditors generally. Cost-efficiency is key in this case given the proposed priming lien, uncertainty of collateral values, and lack of adequate protection (as detailed below).

18.     With the proposed DIP priming liens, high costs are especially important, as they will erode recoveries to creditors, including Rooster Capital and Ag Funding.

19.     Accordingly, the Court should approve the DIP facility with the most economical and advantageous DIP financing terms and conditions available to the Debtors.

DE 8649724.1

**II.      The DIP Must Adequately Protect the $2,549,750 Note Real Property Collateral**

20.      DIP financing pursuant to 11 U.S.C. § 364(d) is only available as a last resort when the debtor cannot obtain any other type of financing (unsecured loans on an administrative priority basis or non-priming DIPs) and either the holders of existing liens (*i.e.* the primed lenders) consent or the debtor can demonstrate that these secured creditors are adequately protected from the diminution in value of their collateral resulting from the priming lien. *See* 11 U.S.C. § 364(d)(1)(B); *see also Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 693 (Bankr. E.D.N.C. 2009); *In re Reading Tube Indus.*, 72 B.R. 329, 332-33 (Bankr. E.D. Pa. 1987).

21.      "Priming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected. Bankruptcy judges are required to grant Section 364(d) financing only upon a tangible demonstration of adequate protection." *In re LTAP US, LLLP,* No. 10-14125 (KG), 2011 WL 671761, at *3 (Banta. D. Del. Feb. 18, 2011) (citations omitted). Because of the harm to primed lienholders, courts must be "particularly cautious when evaluating whether the subordinated creditor is adequately protected." *In re Stoney Creek Techs., LLC,* 364 B.R. 882, 890 (Bankr. E.D. Pa. 2017*)* (citation and internal quotation marks omitted). As explained by one court, "[t]his requirement is designed to preserve the secured creditor's position at the time of the bankruptcy." *Suntrust Bank*, 406 B.R. at 693-94 (*citing In re Campbell Sod., Inc.*, 378 B.R. 647, 653 (Bankr. D. Kan. 2007)); *see also In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986)("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy.").

22.      The Debtors must demonstrate that the proposed priming DIP lien on the $2,549,750 Note Real Property Collateral will not reduce the value of Rooster Capital's interest and, if it does, that the proposed adequate protection will compensate Rooster Capital for the

DE 8649724.1

diminution in value. 11 U.S.C. §§ 361, 363; *In re Las Vegas Monorail Co.,* 429 B.R. 317, 326 (Bankr. D. Nev. 2010); *see In re Glassstream Boats, Inc.,* 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990); *see also In re Swedeland Development Group, Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994); *In re Mosello,* 195 B.R. 277, 287-288 (Bankr. S.D.N.Y. 1996).

23.    The Debtors have not met their burden to establish that Rooster Capital is adequately protected. *See, e.g. In re L.A. Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011). As an initial matter, Local Bankruptcy Rule 4001.01 and Appendix I, make clear that priming lien provisions are "rarely, if ever" granted on an interim basis. Conterra does not believe that the Debtors have established a sufficient basis for granting this extraordinary relief on an interim basis, and therefore objects to the same as a general matter.

24.    Even on a final basis, however, it does not appear that the Debtors can meet their burden with respect to Rooster Capital. While unclear from the Revised Sandton DIP Term Sheet, assuming the Debtors propose to continue offering adequate protection in the form proposed in paragraph 27 of the DIP Motion, the Debtors principally rely on offering protection to the $2,549,750 Note Real Property Collateral with an equity cushion.

25.    Whether an equity cushion provides adequate protection is determined on a case-by-case basis. *See In re Kost*, 102 B.R. 829, 831 (Bankr. D. Wyo. 1989); *see also In re Tucker*, 5 B.R. 180, 183 (Bankr. S.D.N.Y. 1980). "Equity cushion" has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect. *See In re Mellor*, 734 F.2d 1396, 1400 n.2 (9th Cir. 1984)(*citing In re Roane*, 8 B.R. 997, 1000 (Bankr. E.D. Pa. 1981), *aff'd* 14 B.R. 542 (D.C.E.D. Pa. 1981).

26. Aside from proving with admissible evidence that an equity position exists, the Debtors must prove that the equity cushion is sufficient and stable. *See In re Packard Square,* 574 B.R. 107, 121 (Bankr. E.D. Mich. 2017) (noting that, to prove an equity cushion will provide adequate protection to primed creditors, a debtor must prove the equity cushion will exist into the future as the full post-petition loan is advanced); *In re Shaw Industries, Inc.,* 300 B.R. 861 (Bankr. W.D. Pa. 2003) (denying a priming facility despite equity cushion in excess of proposed financing because equity was rapidly eroding due to significant losses); *In re Timber Products, Inc.,* 125 B.R. 433, 440 (Bankr. W.D. Pa. 1990) ("The equity cushion is inadequate because of the unlikelihood that Debtors will meet projections, the accrual of interest which will erode the cushion, and the [collateral's] depreciation in value over time."); *In re Sharon Steel Corp.,* 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) ("Where an equity cushion is insufficient in size or likely to erode, it cannot, standing alone, constitute adequate protection.").

27. Conterra, solely in its capacity as the servicer and power of attorney for Rooster Capital related to the Rooster Capital Loan, respectfully submits that the Debtors have failed to carry their burden to demonstrate that Rooster Capital is adequately protected from the diminution in the value of the $2,549,750 Note Real Property Collateral due to the imposition of priming liens under the proposed Revised Sandton DIP Facility.

28. On its face, there is not a sufficient equity cushion in the $2,549,750 Note Real Property Collateral to support a proposed $45,000,000.00 DIP loan, where the $2,549,750 Note Real Property Collateral had a value of $4,250,000.00 only two years ago. *See supra* ¶ 14.

29. Given these realities, at best, and assuming that the Debtors prove, with admissible evidence, that a sufficient, stable equity cushion exists (none of which Conterra concedes and

accordingly holds the Debtors to strict proof on the same), the proposed priming lien must be capped to protect Rooster Capital's interest.

30.     Conterra proposes that a fair, reasonable, and equitable cap should be based on an objective measure, such as the percentage of the $2,549,750 Note Real Property Collateral's value relative to the total value of the DIP Collateral, with such percentage applied to the entire DIP facility for calculation of the cap.

31.     As of the date of this filing, it is unclear what the total value is of all the Debtors' property that would be considered DIP Collateral. By the Debtors' estimates in the DIP Motion, however, it appears that the Debtors place that value at approximately $643,000,000. DIP Motion ¶ 17. Accepting that number for the sake of argument only (again, Conterra does not concede this and holds the Debtors to strict proof by admissible evidence), the $2,549,750 Note Real Property Collateral's value of approximately $4,250,000, represents only 0.66% of the total value of the DIP Collateral. As such, with a proposed $45,000,000 DIP Facility, the priming lien on the $2,549,750 Note Real Property Collateral should be no greater than 0.66% of the total DIP, or no greater than $297,433. This again all assumes that the Debtors have met their respective burdens for establishing that a Section 346(d) priming lien is justified as an initial matter.

WHEREFORE, Conterra, solely in its capacity as the servicer and power of attorney for Rooster Capital and Ag Funding, respectfully requests that the Court enter an order (i) approving the DIP Motion only to the extent it proposes DIP financing with the most economical and advantageous DIP financing terms and conditions available to the Debtors; (ii) denying consideration of any proposed priming liens on an interim basis; (iii) with respect to Rooster Capital, approving the DIP Motion only to the extent that it adequately protects Rooster Capital's first lien on the $2,549,750 Note Real Property Collateral, including without limitation, capping

any DIP lien on the $2,549,750 Note Real Property Collateral proportionate to the value of the

$2,549,750 Note Real Property Collateral relative to the total value of all DIP Collateral; and

(iv) granting such other and further relief as the Court deems just and appropriate.

DATED April 8, 2024.

Respectfully submitted,

SPENCER FANE LLP

/s/*Zachary R.G. Fairlie*
John O'Brien (Pro Hac Vice)
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203-4554
Telephone: 303-839-3800
Email: jobrien@spencerfane.com

Scott C. Powers #9958
Spencer Fane LLP
10 Exchange Place, 11th Floor
Salt Lake City, UT 84111
Telephone: 801-322-9164
Email: spowers@spencerfane.com

Zachary R.G. Fairlie (Pro Hac Vice)
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Telephone: 816-474-8100
Fax: 816-474-3216
Email: zfairlie@spencerfane.com

Attorney for Conterra Holdings, LLC d/b/a
Conterra Ag Capital as loan servicer and power of
attorney for Ag Funding SC II LLC and Conterra
Holdings, LLC d/b/a Conterra Ag Capital as loan
servicer and power of attorney for Rooster Capital
IV LLC

DE 8649724.1

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 8, 2024 I served via CM/ECF system an electronic copy of the foregoing on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and the L.B.R. at the following addresses:

| | |
|---|---|
| Matthew T. Christensen | mtc@johnsonmaylaw.com |
| U.S. Trustee | Ustp.region18.bs.ecf@usdoj.gov |
| Sheila R. Schwager | sschwager@hawleytroxell.com |
| Brent R. Wilson | bwilson@hawleytroxell.com |
| Daniel C. Green | dan@racineolson.com |
| Heidi Buck Morrison | heidi@racineolson.com |

The undersigned further certifies that on April 8, 2024 a true and correct copy of the foregoing was served to the following by first class, postage prepaid U.S. Mail:

Millenkamp Cattle, Inc.
471 N 300 Rd W
Jerome, ID  83338

Matthew T. Christensen
Johnson May
199 N. Capitol Blvd Ste 200
Boise, ID  83702

/s/ Zachary R.G. Fairlie
Zachary R.G. Fairlie

DE 8649724.1